v.

**WORKERS' COMPENSATION APPEAL BOARD (HERNANDEZ),**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 2, 1998.

Decided March 17, 1998.

Nataly A. Harker, Philadelphia, for petitioner.

Kenneth S. Hall, Norristown, for respondent.

Before PELLEGRINI and FRIEDMAN, JJ., and JIULIANTE, Senior Judge.

FRIEDMAN, Judge.

AT&T (Employer) appeals from an order of the Workers' Compensation Appeal Board (WCAB) which affirmed the decision of a workers' compensation judge (WCJ) denying Employer's petition for termination and granting Ruben Hernandez' (Claimant) petition to review compensation benefits.

On April 8, 1989, while working for Employer as a building attendant, Claimant sustained a work-related injury when a large cabinet filled with computers fell on to his left hip, causing his right hip to strike the floor and trapping Claimant between the cabinet and the floor. (WCJ's Findings of Fact, No. 1.) Claimant received workers' compensation benefits pursuant to a notice of compensation payable issued by Employer on October 30, 1990;[1] the notice of compensation payable described Claimant's work injury as a "back sprain." (WCJ's Findings of Fact, No. 2; R.R. at 1A.)

On February 5, 1991, Employer filed a petition to terminate Claimant's compensation benefits, alleging that Claimant had fully recovered from his work-related back sprain as of November 6, 1990, and that Claimant was able to return to his usual occupation without limitation but for his bilateral aseptic necrosis of the hips, a non-work-related pathology. (R.R. at 2A.) Claimant filed an answer denying Employer's allegations and averred continued total disability from his work-related injury. (R.R. at 3A.) Further, on October 20, 1993, Claimant filed a petition to review compensation benefits (Petition), alleging that the notice of compensation payable did not properly reflect the traumatic injury to Claimant's left and right hips which led to his bilateral aseptic necrosis.[2] (R.R. at 16A.) Employer filed an answer denying these allegations. Employer's termination petition was consolidated with Claimant's Petition, and hearings were held before a WCJ.[3]

1. Prior to the issuance of the notice of compensation payable, Claimant received salary from Employer in lieu of compensation. (R.R. at 1A.)

2. We note that the Pennsylvania Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§ 1–1041.4, makes no provision for a claimant to amend a notice of compensation payable to include an additional injury not admitted to by the employer at the time the employer initially issued the notice of compensation payable. A notice of compensation payable is not an agreement between the parties, but, rather, is a voluntary admission by the employer; in an effort to avoid litigation, the employer admits responsibility, and assumes liability, for the employee's injury as specifically described in the notice of compensation payable. Because there is no right to appeal from a notice of compensation denial, and because there exists no authority that would permit any entity other than the employer itself to add to the employer's admission in the notice of compensation payable, Claimant here should have filed a claim petition in order to receive benefits for the hip injury which he alleges also resulted from his April 8, 1989 work incident. We now take this opportunity to caution practitioners against the inappropriate filing made here; however, because no objection was raised to Claimant's Petition, and because the record supports the relief to which Claimant would properly be entitled, we will not consider the form of Claimant's Petition to be controlling, and we will deem it to have been filed pursuant to the appropriate section of the Act, thereby treating it as a claim petition. *See*

*General Refractories Co. v. Workmen's Compensation Appeal Bd. (Wright)*, 535 Pa. 306, 635 A.2d 120 (1993). In doing so, we want to dispel any confusion that might arise as a result of the recently decided *Campbell v. Workers' Compensation Board of Appeal (Antietam Valley Animal Hospital)*, 705 A.2d 503 (Pa.Cmwlth.1998). In *Campbell*, the claimant filed a review petition seeking to revise the description of her injury in a notice of compensation payable. However, in that case, the claimant alleged a disability that arose as a *natural consequence* of the work-related injury for which the employer already had admitted liability in the notice of compensation payable. In contrast, Claimant here alleges that a hip injury resulted from the same work incident that caused the back sprain for which Employer accepted responsibility in the notice of compensation payable; however, Claimant does not contend that his aseptic necrosis of the hips occurred as a natural consequence of the back sprain or was, in fact, related to the back sprain in any way. However, despite this distinction, we note that, even in *Campbell*, it would have been preferable for the claimant to have filed a claim petition in order to obtain benefits.

3. Also consolidated with Employer's petition to terminate and Claimant's Petition was a penalty petition filed by Claimant on June 19, 1991, alleging that Employer failed to pay reasonable, necessary medical expenses incurred in connection with Claimant's April 8, 1989 injury. (R.R. at 4A.) The WCJ's denial of Claimant's penalty petition was not appealed and is not before us.

In support of its petition to terminate and to counter Claimant's Petition, Employer presented the deposition testimony of three medical experts: Walter Scheuerman, M.D.;[4] John Sbarbaro, Jr., M.D.;[5] and Daniel Gross, M.D.,[6] who all testified that Claimant had recovered from any work-related disability. Although Drs. Sbarbaro and Gross agreed that Claimant was suffering from bi-

lateral aseptic necrosis of the hips, they opined that the condition was not causally related to Claimant's work injury of April 8, 1989.

In opposition to Employer's termination petition and in support of his Petition, Claimant presented the deposition testimony of Kenneth Izzo, M.D.,[7] and Richard S. Glick,

4. Dr. Walter Scheuerman, Board-certified in neurologic surgery, examined Claimant on behalf of Employer on October 16, 1989, at which time Claimant essentially complained of lower back pain which occurred whenever he was sitting or lying down for any length of time, and constant right groin pain, radiating down the front of his right thigh. (R.R. at 463A–64A.) Based upon the history as related by Claimant, Dr. Scheuerman's own clinical examination and a review of diagnostic test reports, including an MRI performed August 23, 1989 and an EMG performed June 10, 1989, Dr. Scheuerman's impression was that Claimant had probably sustained myofascial injuries as a result of the work incident of April 8, 1989; in which case, in six months time, Claimant should have improved to the extent that he should have the ability to return to work without limitation. (R.R. at 474A–75A.) Dr. Scheuerman could offer no opinion with respect to Claimant's bilateral avascular (aseptic) necrosis. (R.R. at 476A–80A, 488A.) (See WCJ's Findings of Fact, No. 4.)

5. Dr. John Sbarbaro, a Board-certified orthopedic surgeon, examined Claimant on behalf of Employer on August 10, 1993. Based upon his review of Claimant's prior medical history, including diagnostic tests, and his orthopedic evaluation of Claimant, Dr. Sbarbaro formulated the following diagnoses: aseptic necrosis of the hips, most likely stemming from drug and alcohol problems for which Claimant was treated in 1987; strain and sprain of the low back and trochanteric bursitis about the right trochanter, related to the work injury of April 8, 1989 but resolved as of the date of his examination; and, degenerative arthritis of the lumbar spine, predating the 1989 work accident and presently causing symptoms in Claimant's back that reflect the progression of the pre-existing problem. (R.R. at 526A–27A, 530A–31A, 536A.) On further direct examination, Dr. Sbarbaro acknowledged that Claimant's degenerative arthritis could have been aggravated by the work-related injury of April 8, 1989, and Dr. Sbarbaro stated that, as of the date of his examination, Claimant exhibited symptoms of such aggravation in the nature of low back tenderness and stiffness. However, Dr. Sbarbaro suspected that after four years, the aggravation should have resolved so that what Claimant was experiencing might well be the normal progression of the original process. (R.R. at 533A–34A.) Despite this somewhat equivocal testimony, Dr. Sbarbaro ultimately concluded that, as of the date of his examination,

Claimant had recovered from his April 8, 1989 work injury and did not require additional treatment. (R.R. at 536A–38A.) (See WCJ's Findings of Fact, Nos. 5–6.)

6. Dr. Daniel Gross, Board-certified in orthopedic surgery, initially examined Claimant on June 26, 1990 to evaluate the pain associated with Claimant's right lower extremity but was unable to formulate a diagnosis at such time. (R.R. at 423A.) Dr. Gross' next evaluation of Claimant occurred on November 6, 1990, at which time he focused primarily on Claimant's hip. Dr. Gross testified that an MRI of Claimant's hips indicated advanced bilateral aseptic necrosis, but that, in his opinion, the condition was not related to Claimant's work injury of April 8, 1989, because the trauma of that injury was not severe enough. (R.R. at 425A–27A, 433A.) In that regard, Dr. Gross testified that Claimant only sustained a soft tissue injury of the back that certainly would have resolved in a period of six months; thus, Dr. Gross opined that there were no residuals from Claimant's work injury that would have prevented his return to his pre-injury job and that Claimant's inability to go back to work stemmed only from his non-work-related hip difficulties. (R.R. at 431A–34A.) However, on cross-examination, Dr. Gross acknowledged that Claimant's aseptic necrosis could have been developing prior to the work-related injury, and that, if it were, the trauma of the injury probably accelerated the condition on the right side. (R.R. at 437A, 448A–49A, 452A.) Finally, Dr. Gross testified that, in his opinion, Claimant had no residual problems related to work, despite the fact that he had not been instructed to examine Claimant's lower back. (R.R. at 433A, 450A.) (See WCJ's Findings of Fact, No. 7.)

7. Dr. Izzo, Board-certified in physical medicine and rehabilitation, first examined Claimant on April 25, 1989. At that time, Dr. Izzo formulated the following diagnoses which, in his opinion, were related to Claimant's work-related injury of April 8, 1989: acute lumbosacral strain and sprain with injury to the myoligamentous structures; right lumbar radiculopathy; status post-right hip contusion; post-traumatic right greater trochanteric bursitis; mild cervical strain and sprain; and left thigh laceration. (R.R. at 299A–300A.) After the initial visit, Dr. Izzo continued to treat Claimant on a regular basis through August of 1990; however, Claimant's condition

D.O.,[8] who both stated that Claimant remained disabled as a result of his work-related back injury as well as from his bilateral aseptic necrosis of the hips, which they also related to the trauma of Claimant's April 8, 1989 work injury. In addition, Claimant testified on his own behalf,[9] stating that he was unable to return to work because of continuing pain in his lower back and in both hips.

After consideration of the evidence, the WCJ made credibility determinations and re-

only deteriorated. (R.R. at 300A–09A.) Dr. Izzo further indicated that an MRI report of Claimant's hips, dated August 2, 1990, was virtually diagnostic of bilateral aseptic avascular necrosis of the hips, which Dr. Izzo related to the trauma of Claimant's April 8, 1989 work injury. (R.R. at 309A, 312A–13A.) After a sixteen month lapse, Dr. Izzo resumed his treatment of Claimant in March of 1992, at which time an EMG indicated that Claimant's condition had worsened. (R.R. at 318A–25A.) In fact, as of the date of his testimony on April 2, 1993, Dr. Izzo was of the opinion that Claimant had been totally disabled from his pre-injury employment commencing as of April 8, 1989 and continuing thereafter. (R.R. at 331A–34A.) On cross-examination, Dr. Izzo dismissed any connection between Claimant's bilateral aseptic necrosis and his prior problems with alcohol, based on the fact that a number of years had passed since such problems, and, in the interim, Claimant had not experienced any problems with his hips. (R.R. at 356A–58A.) Dr. Izzo also stated that Claimant's current impairment stemmed as much from his back problems as from his avascular necrosis of the hips. (R.R. at 376A.) (*See* WCJ's Findings of Fact, No. 9.)

8. Dr. Glick was deposed on November 20, 1992, at which time he was still treating Claimant. Dr. Glick stated that he began treating Claimant on April 11, 1989 and, after obtaining a history from Claimant and examining him, he diagnosed Claimant as suffering from: acute, severe lumbosacral strain and sprain with injury to the ligamentous structure; sprain of the right groin area; right lumbar radiculopathy; possible left lumbar radiculopathy; multiple contusions and a laceration above the left knee, all of which he related to Claimant's work injury of April 8, 1989. (R.R. at 184A–88A.) Dr. Glick further testified that, during his course of treatment for Claimant, this diagnosis changed when an August 1, 1990 MRI revealed that Claimant also had avascular (aseptic) necrosis of both hips and a bulging lumbar disc. (R.R. at 194A–95A.) Dr. Glick indicated that avascular necrosis is a *degeneration* of bone due to a loss of blood supply *which* can be caused either by trauma or by systemic disease. Although he was not able to establish specifically what led to Claimant's aseptic necrosis or bulging disc, Dr. Glick did testify

solved conflicts in the testimony. Specifically, the WCJ found the testimony of Drs. Izzo and Glick to be credible and persuasive, and the WCJ accepted their testimony over that of Drs. Scheuerman, Sbarbaro and Gross, where the opinions conflicted. Based on the credible medical evidence, the WCJ found that Claimant's bilateral aseptic necrosis was caused by the trauma Claimant incurred as a result of his work-related injury of April 8, 1989 and, further, that Claimant has not fully recovered from that work injury. (WCJ's

within a reasonable degree of medical certainty that Claimant's symptomology resulted from the trauma that occurred during the April 8, 1989 work-related accident, either by causing it directly or by making what apparently was a clinically asymptomatic condition symptomatic. (R.R. at 196A–99A.) Dr. Glick also described Claimant's back condition as still very symptomatic and opined that Claimant's back condition alone, described by Dr. Glick as chronic refractory lumbar strain and sprain, bulging disc, and lumbar radiculopathy, would render him unable to perform his pre-injury work duties. (R.R. at 202A–06A, 261A.) On cross-examination, Dr. Glick conceded that he had never inquired whether Claimant had a history of alcohol abuse, and he admitted that such abuse might be a participating factor in Claimant's aseptic necrosis. (R.R. at 225A–26A.) However, when asked to assume that Claimant had abused alcohol or narcotics, Dr. Glick indicated that this did not change his belief that the trauma of Claimant's work-related injury aggravated Claimant's avascular aseptic necrosis. (R.R. at 253A–54A.) (*See* WCJ's Findings of Fact, No. 10.)

9. Claimant testified before the WCJ at a January 19, 1993 hearing and again on October 28, 1993. On both occasions, he stated that he continued to experience pain in his lower back and both hips, requiring him to use a cane and back brace. Claimant also testified that the pain extended down his left leg, which became numb at night. (N.T. 1/19/93 at 35–37, R.R. at 105A–07A; N.T. 10/28/93 at 3–4, R.R. at 149A–50A; WCJ's Findings of Fact, No. 11.) When asked, Claimant indicated that he did not feel that he was capable of returning to his pre-injury employment because of the required walking, carrying, moving and climbing. (N.T. 1/19/93 at 42, R.R. at 112A; N.T. 10/28/93 at 11, R.R. at 157A; WCJ's Findings of Fact, No. 11.) Claimant also admitted that he had a drug and alcohol problem during 1986 but stated that he had undergone rehabilitation and has been drug and alcohol free since returning to work in 1987. In fact, Claimant testified that, from the time he went back to work until his accident almost two years later, he had a perfect attendance record. (N.T. 1/19/93 at 37–41, R.R. at 108A–11A.)

Findings of Fact, No. 12(a).) The WCJ also accepted Claimant's testimony as credible and persuasive and, thus, found that Claimant remained symptomatic with both back and hip related problems. (WCJ's Findings of Fact, No. 12(b).) Based on all of these findings, the WCJ denied Employer's termination petition, concluding that Employer failed to meet its burden of establishing that Claimant had fully recovered from his April 8, 1989 work-related injury. The WCJ also concluded that Claimant had satisfied his burden under the Petition by establishing that his bilateral aseptic necrosis of the hips was related to the work injury of April 8, 1989. Accordingly, the WCJ granted Claimant's Petition and amended the notice of compensation payable to include bilateral aseptic necrosis of the hips.[10] The WCAB affirmed, and Employer now appeals to this court.[11]

Employer first contends that the WCAB erred in affirming the WCJ's grant of Claimant's Petition, arguing that the WCJ's finding of a causal connection between Claimant's bilateral aseptic necrosis and his April 8, 1989 work injury was based on incompetent medical evidence. We disagree.

■■■ To prevail on his Petition and, thus, receive benefits for his bilateral aseptic necrosis of the hips, Claimant had the burden of proving a causal relationship between the disabling hip condition and the work incident of April 8, 1989, and where, as here, that causal relationship is not obvious, unequivocal medical evidence is required to meet the burden. *Cardyn v. Workmen's Compensation Appeal Bd. (Heppenstall)*, 517 Pa. 98, 534 A.2d 1389 (1987). Medical evidence is sufficiently unequivocal if the medical witness, after providing a foundation, testifies that, in his professional opinion, certain facts exist, or that he believes or thinks certain facts exist, so long as the medical witness

does not recant the opinion or belief first expressed. *Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Bd. (Lucas)*, 77 Pa.Cmwlth. 202, 465 A.2d 132 (1983). However, where the foundation for the medical evidence is contrary to the established facts in the record, or is based on assumptions not in the record, the medical opinion is valueless and not competent. *State Workmen's Ins. Fund v. Workmen's Compensation Appeal Bd. (Wagner)*, 677 A.2d 892 (Pa.Cmwlth.1996); *Lookout Volunteer Fire Co. v. Workmen's Compensation Appeal Bd.*, 53 Pa.Cmwlth. 528, 418 A.2d 802 (1980). Here, Employer challenges the testimony of both Dr. Glick and Dr. Izzo, claiming that neither meets the standard for competent evidence.

■■■ First, Employer claims that Dr. Glick's testimony is incompetent because he conceded that he had no idea what caused Claimant's bilateral aseptic necrosis and that a history of alcoholism, if known, would have been a significant factor in determining the etiology of Claimant's hip condition. However, in making this claim, Employer clearly misreads Dr. Glick's testimony. Dr. Glick indicated that avascular aseptic necrosis can be caused either by trauma or by systemic disease, and, although he could not identify with certainty what led to Claimant's condition, he nevertheless unequivocally related Claimant's aseptic necrosis to Claimant's April 8, 1989 work injury. Indeed, Dr. Glick testified within a reasonable degree of medical certainty that Claimant's symptomology resulted from the trauma that occurred during his work accident, either by causing it outright or by making a previously asymptomatic condition symptomatic. (R.R. at 196A–99A.) Further, Dr. Glick never recanted this expressed opinion. On cross-examination, Dr. Glick conceded that a history of alcohol abuse might be a factor in Claimant's

---

**10.** As discussed in footnote 2 of this opinion, the WCJ was without authority to amend the notice of compensation payable to include Claimant's bilateral aseptic necrosis of the hips. Instead, the WCJ should have awarded Claimant benefits for his disabling hip condition based on Claimant's having satisfied his burden of establishing his entitlement to compensation pursuant to a claim petition.

**11.** Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, and whether all necessary findings of fact are supported by substantial evidence. *Lowe v. Workmen's Compensation Appeal Bd. (Pennsylvania Mines Corp.)*, 683 A.2d 1327 (Pa.Cmwlth. 1996).

aseptic necrosis, (R.R. at 225A–26A); however, even when he was asked to assume that Claimant had abused alcohol, Dr. Glick did not alter his belief that the trauma of Claimant's work-related injury aggravated Claimant's avascular aseptic necrosis. (R.R. at 253A–54A.) Accordingly, the WCJ did not err in relying on Dr. Glick's medical testimony as substantial support for his finding of a causal relationship between Claimant's April 8, 1989 work injury and his aseptic necrosis of the hips.

Employer also maintains that Dr. Izzo's testimony is incompetent, noting that Dr. Izzo ruled out Claimant's alcohol abuse as a cause of his bilateral aseptic necrosis based on a mistaken belief that Claimant had stopped abusing alcohol more than *five or six years prior to his work injury* and had not experienced any hip problems in the interim. (R.R. at 356A–58A.) Employer asserts that Dr. Izzo's assumption was contrary to the established facts, namely Claimant's credible testimony that he was drinking a fifth of Southern Comfort every week and a case of beer every day for a year between mid 1986 and October 1987, which was only *one and a half years prior to his work injury*. (R.R. at 126A–28A.) According to Employer, because Dr. Izzo emphasized the length of time between Claimant's alcohol abuse and his work injury when he dismissed alcoholism as a cause of Claimant's condition, Dr. Izzo's opinion relating Claimant's bilateral aseptic necrosis to the April 8, 1989 work incident is incompetent and could not provide support for the WCJ's determination that Claimant's aseptic necrosis was work-related. Even if

we were to accept Employer's argument,[12] Employer ultimately could not prevail. As previously stated, Dr. Glick's testimony alone provides substantial support for the WCJ's finding of a causal relationship between Claimant's aseptic necrosis and his work injury, and, thus, the WCAB did not err in affirming the grant of Claimant's Petition.[13]

Next, Employer argues that the WCAB erred in affirming the WCJ's denial of Employer's termination petition because substantial, competent evidence in the record established that Claimant had fully recovered from his disabling, work-related back injury as of November 6, 1990, or at least as of August 10, 1993. Again, we disagree.

In a termination proceeding, the employer bears the burden of proving by substantial evidence that all of the claimant's work-related disability has ceased. *Battiste v. Workmen's Compensation Appeal Bd. (Fox Chase Cancer Center)*, 660 A.2d 253 (Pa.Cmwlth.1995). Where disability is present and the employer seeks to terminate benefits, the employer bears the burden of proving an independent cause for the disability or a lack of causal connection between the continuing disability and the work-related injury. *Id.* This burden is considerable because disability is presumed to continue until demonstrated otherwise. *Id.* Here, Employer clearly did not meet its burden.

In arguing to the contrary, Employer would have us reject the credibility determinations made by the WCJ and accept the testimony of Employer's medical experts

---

12. It is not clear that Dr. Izzo's opinion, disassociating Claimant's alcoholism from his aseptic necrosis, was dependent on any mistaken belief that Claimant had been alcohol and drug free for five to six years prior to his work injury. Dr. Izzo admitted that he did not know exactly how many years prior to the work injury Claimant's alcohol problem ended, just that it was a number of years and, in the interim, Claimant had an active life and held a strenuous job with no hip problems at all. (R.R. at 358A.) Because the facts of record clearly establish that Claimant had been completely free of alcohol for nearly two years prior to the April 8, 1989 work incident, during which time he had a perfect attendance record and no hip problems, Dr. Izzo may well have eliminated alcoholism as a possible cause of Claimant's aseptic necrosis in any event.

13. Employer also asserts that the WCAB erred in affirming the WCJ's grant of Claimant's Petition for reasons that essentially amount to Employer's claim that the WCJ improperly accepted the opinions of Drs. Glick and Izzo over the superior medical opinions of Employer's medical experts. Any argument of this sort is clearly meritless. As we have so often stated, the WCJ, as fact-finder in a workers' compensation proceeding, has exclusive province over questions of credibility and evidentiary weight and, in this role, is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *Greenwich Collieries v. Workmen's Compensation Appeal Bd. (Buck)*, 664 A.2d 703 (Pa.Cmwlth. 1995).

over that of Claimant and his medical experts. However, the WCJ, as fact-finder, is the sole arbiter of credibility, and where his findings are supported by substantial, competent evidence, we may not disturb them on appeal. *Greenwich Collieries v. Workmen's Compensation Appeal Bd. (Buck)*, 664 A.2d 703 (Pa.Cmwlth.1995). Here, the testimony of Dr. Glick, Dr. Izzo and Claimant, all credited by the WCJ, provides substantial support for the WCJ's finding that Claimant has not fully recovered from his April 8, 1989 work injury and remains disabled with work-related back and hip problems. Therefore, the WCAB did not err in affirming the denial of Employer's termination petition.

Accordingly, we affirm the WCAB's order to the extent it denies Employer's termination petition and grants Claimant benefits for his compensable hip condition. However, to the extent that the grant of benefits would amend Employer's notice of compensation payable to include an injury to Claimant's hips in addition to back sprain, we vacate the WCAB's order.

### ORDER

AND NOW, this 17th day of March, 1998, the order of the Workers' Compensation Appeal Board, dated August 11, 1997, is hereby affirmed to the extent that it denies AT&T's termination petition and grants Ruben Hernandez' petition in the nature of a claim petition seeking benefits for a compensable hip condition. The order is vacated to the extent that it would amend AT&T's notice of compensation payable to include any additional injury.