507 A.2d 1287

Westinghouse Electric Company, Petitioner *v.* Workmen's Compensation Appeal Board (Pollock), Respondents.

Argued March 13, 1986, before Judges COLINS and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Arthur A. Asti, Jr., David H. Trushel & Associates,* for petitioner.

*Joel Persky, Henderson & Goldberg, P.C.,* for respondent, Donald R. Pollock.

OPINION BY JUDGE COLINS, April 18, 1986:

Westinghouse Electric Corporation (employer) appeals an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's decision setting aside the final receipt executed by Donald R. Pollock (claimant) and awarding him workmen's compensation benefits. We must determine whether the referee capriciously disregarded competent evidence by excluding from the record surveillance films of the claimant's activities allegedly taken by the employer.

The claimant suffered a compensable injury to his lower back on April 7, 1981, while working as an assembler for the employer. As an assembler, the claimant was required to lift parts weighing as much as 150 pounds and to wrestle weights up to 1500 pounds. His injury required two laminectomies and an extensive recuperation, during which time, the claimant received compensation for total disability pursuant to a Notice of Compensation Payable. On March 18, 1983, the claimant signed a final receipt[1] terminating the employer's liability. He did not return to work. Rather, on the same date, the claimant filed a petition to reinstate compensation in which he averred that he remained disabled.[2] The claimant's Petition for Reinstatement was later amended to a Petition to Set Aside a Final Receipt.

At hearings before the referee, the claimant testified that, as of the date he signed the final receipt, he continued to experience pain in his back and was undergoing treatment. The claimant also offered the deposition testimony of his treating physician, the orthopedic surgeon who had performed his back surgeries. This

---

[1] The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, Section 434, *as amended,* 77 P.S. §1001.

[2] The claimant testified before the referee that the employer did not explain to him that the document he executed was a final receipt.

physician opined that the claimant suffered acute residual strain from the surgeries, was subject to lifting restrictions of approximately twenty-five pounds and remained unable to perform his pre-injury position. This physician examined the claimant on June 13, 1983 and then reaffirmed his evaluation of the claimant's total disability.

The employer proferred the deposition testimony of two medical witnesses who had examined the claimant, reviewed his medical history, and observed surveillance films allegedly taken of the claimant on March 5, 1983, some two weeks prior to his execution of the final receipt. These witnesses opined that the claimant was capable of returning to his pre-injury position with the employer.

The referee refused to admit these surveillance films into evidence. In lieu of the films, the referee did admit seven photographs of the claimant, purportedly printed from frames of the surveillance films. The employer further presented the testimony of the private investigator who had filmed the claimant's activities. This investigator testified that he observed the claimant performing repair work on several automobiles; at one point, he observed the claimant lift and carry the cap of a pickup truck with the assistance of several other individuals. The claimant's medical witness had not reviewed these films.

To support a Petition to Set Aside a Final Receipt, a claimant must demonstrate by sufficient credible and competent evidence that all disability due to the injury has not, in fact, terminated when he signed the final receipt. *Sheibley v. Workmen's Compensation Appeal Board (ARA Food Services)*, 86 Pa. Commonwealth Ct. 28, 483 A.2d 593 (1984).

In his decision, the referee. determined that the claimant had met the above-stated burden, set aside the

final receipt and reinstated compensation. The Board, without taking additional evidence, affirmed.

On appeal to this Court, the employer contends that (1) the referee erred in refusing to admit the surveillance films into evidence; and (2) the referee's decision was not supported by substantial evidence in that the claimant's medical witness had not observed the films and had based his opinion regarding the claimant's disability solely on the subjective statements of pain afforded him by the claimant.

We find the employer's first argument persuasive. It is the most basic premise of an administrative proceeding that both parties may present relevant and material evidence in furtherance of their respective positions. 1 Pa. Code §35.161. The regulations in this area make the role of the referee in an administrative proceeding analogous to that of a civil trial judge; the referee here rules on the admissibility of all evidence so as to confine it to the issues in the proceeding. 1 Pa. Code §35.162. The referee's exclusion of evidence is proper if the proffered testimony is not legally relevant or material to a fact in issue. *See Commonwealth v. Strickland Transportation Corp.*, 30 Pa. Commonwealth Ct. 463, 373 A.2d 1188 (1977). Of import to this case, as we will discuss, is the prerogative of the referee to exclude evidence that is unduly repetitive or cumulative. 1 Pa. Code §35.161.

Surveillance films, even when taken without the consent of the subject, may be used as evidence in workmen's compensation proceedings for the purpose of establishing facts, *Holshue v. Workmen's Compensation Appeal Board (Robideau Express)*, 84 Pa. Commonwealth Ct. 253, 479 A.2d 42 (1984); *Isadore v. Workmen's Compensation Appeal Board (Owens-Illinois)*, 77 Pa. Commonwealth Ct. 346, 465 A.2d 1096 (1983), if relevant, and if the proper safeguards of identification and authentication are met. *Hawthorne v. Workmen's*

*Compensation Appeal Board (Stone),* 74 Pa. Common-
wealth Ct. 635, 460 A.2d 911 (1983).

In the case *sub judice,* the referee's inquiry focused
on the status of the claimant's disability as of March 18,
1983, the date of the final receipt. Any evidence reveal-
ing that the claimant's disability had in fact terminated
two weeks prior to that date is necessarily germane to
the referee's inquiry. The employer intended to show
the films of the claimant's activities on March 5th in
conjunction with medical testimony regarding the
claimant's health. The films were not used to establish
conclusively that the claimant suffered no disability but,
rather, to impeach the credibility of the claimant's evi-
dence that he was disabled on that date. Further, the
films were authenticated by the testimony of the private
investigator who performed the surveillance.

We find a closer question to be whether or not the
films constituted cumulative evidence properly exclud-
ed within the discretion of the referee. The referee did
consider the photographs of the claimant allegedly
printed from the films, the testimony of the private in-
vestigator regarding his observations concommitant
with the filming and the testimony of the employer's
medical witnesses who had observed the films. Recog-
nizing the dynamic quality of surveillance films and the
advantages of this means of proof,[3] when properly au-
thenticated, *see Reimer v. Delisio,* 296 Pa. Superior Ct.

---

[3] As is stated in *Reimer v. Delisio,* 296 Pa. Superior Ct. 205,
219, 442 A.2d 731, 738 (1982), citing 8 Am. Jur., Proof of Facts 153,
155 (1960):

It is true that the camera does not record on film the same
picture that the eye transmits to the brain, but it is also
true that less distortion is likely to inhere in a photograph-
ic representation of a scene than in a verbal one. In this
respect the motion picture had advantages over the still
photograph, for it may travel, like the eye, over a scene.

205, 442 A.2d 731 (1982), we cannot evaluate the impact of this evidence on the referee's decision and find that, under the circumstances, the referee's exclusion of the films without viewing them was error. We do not intend to imply that surveillance films are the preferred method of proof in workmen's compensation cases and we are mindful of questions of expediency in the resolution of these cases. Nevertheless, we will remand this case to the Board so that the referee may review the films and consider their contents in reaching his decision.

In so doing, we in no way impinge upon the broad powers of the referee in workmen's compensation cases to determine questions of evidentiary weight and credibility and resolve conflicts in the testimony presented. *Isadore.* We hold only that the referee's decision in excluding the surveillance films without reviewing them was premature.

In support of the second argument, the employer cites *Hilliard v. Workmen's Compensation Appeal Board (William Penn Hotel)*, 79 Pa. Commonwealth Ct. 96, 468 A.2d 881 (1983), for the proposition that a medical expert's testimony predicated upon his patient's statements cannot be unequivocal evidence binding on the referee. The employer misapplies the premise of *Hilliard* to the facts *sub judice.* The claimant's physician based his diagnosis not on the bare assertions of the claimant, but on his familiarity with the ongoing course of care he had rendered to the claimant. This physician had performed both laminectomies, had monitored the claimant's recuperation and was continuing to refer him for additional treatment modalities in an attempt to lessen his pain.

Accordingly, the order of the Board is vacated and the case remanded for a decision consistent with this opinion.

ORDER

AND NOW, April 18, 1986, the order of the Workmen's Compensation Appeal Board, No. A-87179, dated October 25, 1984, is vacated and the case remanded for a decision consistent with this opinion.

Jurisdiction relinquished.

Judge PALLADINO dissents.