633 A.2d 230

**Michael PISTELLA, Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (SAMSON BUICK BODY SHOP), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 3, 1993.

Decided Oct. 27, 1993.

344

Lori Ann Gala, for petitioner.

Michael D. Sherman, for respondent.

Before COLINS and PELLEGRINI, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

Michael Pistella (Claimant) petitions for review of the March 16, 1993 decision of the Workers' Compensation Appeal Board (Board) affirming the Referee's decision granting Samson Buick Body Shop's (Employer's) petition for termination of workers' compensation benefits.[1] We affirm.

The facts here are as follows. On July 22, 1987, Claimant sustained an injury in the course of his employment as an auto body repairman. Accordingly, Employer issued a notice of compensation payable accepting liability for the injury to Claimant's right upper extremity and shoulder. "[C]laimant's compensation rate is $280.70, based on an average weekly wage of $421.16." Finding of Fact No. 10.

On August 14, 1990, Employer filed the termination petition at issue therein alleging that, based on the examination of board-certified orthopedic surgeon Dr. Roy S. Temeles, Employer's physician,[2] Claimant was able to return to his employment effective July 23, 1990. Claimant in his answer asserted that he was willing and able to return to sedentary work, but that "no such position has been offered to him." Finding of Fact No. 2.

In support of its termination petition, Employer offered into evidence the deposition testimony and report of Dr. Temeles and a videotape of Claimant doing various activities. Claimant's counsel vehemently objected to the videotape, but despite authentication concerns, the Referee permitted it to

1. We note that the General Assembly has amended The Pennsylvania Workers' Compensation Act to provide that Referees are to be called Workers' Compensation Judges. Because this case arose prior to the amendment, however, we will refer to them as Referees.

2. 4. An earlier Termination Petition was filed by [Employer] in November of 1987. This Referee found, by his decision of February 28, 1989, that [C]laimant's compensation was to continue. Finding of Fact No. 4.

come into evidence. In turn, Claimant offered his own testimony and that of numerous health care professionals.

The Referee found the testimony of Employer's Dr. Temeles to be credible and unequivocal that Claimant was capable of returning to his position as auto body repairman. Finding of Fact No. 12. Dr. Temeles concluded that "there were no residuals of an objective nature related to [the July 22, 1987] accident." January 21, 1991 Deposition of Dr. Temeles at 22. Accordingly, the Referee concluded that Claimant's work-related injuries had terminated and granted Employer's termination petition effective July 23, 1990.

The Board affirmed the decision of the Referee, stating that there was substantial evidence of record in Dr. Temeles' testimony to support the determination that Claimant's work-related injuries had completely healed. Further, the Board concluded that it would not overturn the Referee's decision as to his admission of the videotape. The Board stated that "[a] review of the Referee's decision reveals that the Referee found the tape to be of little probative value." Board's March 16, 1993 Decision at 3. Claimant's timely appeal to this Court followed.

There are four issues before us for review: whether the Board erred in concluding that Claimant's disability ceased and terminated as of July 23, 1990 because 1) it refused to overturn the Referee's decision to allow the surveillance videotape of Claimant into evidence; 2) it refused to overturn the Referee's decision refusing to consider hearsay opinions which neurologists rendered to Claimant's chiropractor, Dr. Gary Bergstein; 3) it erred in not finding fault with the Referee for failing to make findings regarding the reports of Drs. Kasdan and Wachs, two neurologists; and 4) it erred in failing to address the Referee's determination that Claimant failed to submit a fee agreement.

Our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Bethenergy Mines, Inc. v.*

*Workmen's Compensation Appeal Board (Sebro)*, 132 Pa.Commonwealth Ct. 288, 572 A.2d 843 (1990). Further, in a termination petition, the employer has the burden of proving that the disability for which it has agreed to pay compensation has ceased. *Kerns v. Workmen's Compensation Appeal Board (Colt Resources)*, 149 Pa.Commonwealth Ct. 268, 613 A.2d 85 (1992).

Claimant argues that the Referee's acceptance of the videotape into evidence resulted in great prejudice to Claimant because it was not properly authenticated or relevant to the proceedings. The Referee, however, found as follows regarding the videotape:

> The video is found, without authenticating by the takers of it, that it has little probative value. It is additionally found from viewing this that, regardless of authenticating, the only relevant thing that is learned from this very poor presentation is that, at some time (no conclusion of date), [C]laimant was physically able to lift two or three blocks which may have been cement or cinder block. It is noted that a cinder block is somewhat lighter [than] the same size of a cement block. The conclusion drawn from viewing the videos is that this in no way convinces this Referee that [C]laimant could, in fact, do the relatively heavy work required as [an] auto body repairman.

Finding of Fact No. 11.

We have reviewed the videotape in its entirety and totally agree with the Referee's conclusion that it has little probative value. A very brief part thereof shows what may be Claimant and an unidentified companion placing what appear to be several cinder blocks in the back of a pick-up truck. Another small portion shows two men doing what appears to be minor work on a Lincoln Continental automobile. Much of the remaining portions of the tape consist of pictures of some unidentified structures and an unnamed street in an unidentified town, with no human activity taking place. As evidence, most of the tape is worthless.

We acknowledge that the technical rules of evidence are to be relaxed in administrative, workers' compensation proceedings. Section 422 of the Act, 77 P.S. § 834. However, with regard to the role of videotapes in workers' compensation proceedings, we have held as follows:

> Surveillance films, even when taken without the consent of the subject, may be used as evidence in workmen's compensation proceedings for the purpose of establishing facts, ... if relevant, and *if the proper safeguards for identification and authentication are met.*

*Westinghouse Electric Company v. Workmen's Compensation Appeal Board (Pollock),* 96 Pa.Commonwealth Ct. 436, 440, 507 A.2d 1287, 1289 (1986) (citations omitted) (emphasis added).

We conclude that the tapes were only partially authenticated and that the Referee should have sustained Claimant's objection to their admission. Although Claimant's counsel conceded at the hearing that his client had seen the tapes and that the tapes did in fact show him, there was no testimony by the investigator who made the videotape as to the time span covered therein, the dates on which the pictures were taken, or whether they were in fact an accurate representation of the scenes depicted.

However, we also conclude that their admission was harmless error in light of Dr. Temeles' independent, unequivocal medical testimony that Claimant's disability had ceased and terminated as of July 23, 1990.[3] Although we do not condone a total relaxation of evidentiary tenets in workers' compensation proceedings, there is absolutely nothing in the record to reflect that the Referee based his decision on the videotape and not the testimony of Dr. Temeles.[4] For that reason, we find Claimant's argument regarding the admission of the videotape to be without merit.

3. *See* January 21, 1991 Deposition of Dr. Temeles at 21–22.

4. Even though Dr. Temeles reviewed the videotape at issue, he did not use it as a basis for his diagnosis and conclusions. January 21, 1991 Deposition of Dr. Temeles at 27. Instead, he used his examination of Claimant as the basis for his reasonable medical opinion that Claimant's disability had ceased and terminated as of July 23, 1990.

Claimant secondly argues that the Board erred in refusing to overturn the Referee's decision disallowing certain testimony of his chiropractor Dr. Gary Bergstein. The Referee sustained Employer's objections to Dr. Bergstein testifying as to a portion of a written report of Dr. Richard Kasdan, a neurologist, Finding of Fact No. 15.

The specific portion of the Kasdan report which was offered provides as follows:

It would be best for [Claimant] if he were retained [sic; retrained] to do some type of job that did not involve heavy lifting or bending as does an auto body mechanic.

March 21, 1991 Deposition of Dr. Bergstein at 18.

 We acknowledge that, even though such reports are hearsay, they are generally admitted where they would constitute corroborative evidence and are not the sole evidence in the case. *Huff v. Workmen's Compensation Appeal Board (Ingalls Steel of Pennsylvania)*, 70 Pa.Commonwealth Ct. 646, 453 A.2d 753 (1982). Also we agree generally with Claimant's contention that in *Commonwealth v. Thomas*, 444 Pa. 436, 282 A.2d 693 (1971) and other cases, a hearsay exception permits medical experts to express an opinion based, in part, upon reports of others which are not in evidence, but upon which the expert customarily relies in the practice of his profession. *See e.g. Commonwealth v. Daniels*, 480 Pa. 340, 390 A.2d 172 (1978); *In re Preteroti*, 124 Pa.Commonwealth Ct. 540, 556 A.2d 540 (1989).

██ Here, however, we do not believe that the Referee abused his discretion in refusing to consider the above-quoted, out-of-context statement from Dr. Kasdan's report. First, because there is a six-month time span between Dr. Bergstein's March 21, 1991 testimony and the September 28, 1990 Kasdan report offered in conjunction with Dr. Bergstein's testimony, the report does not necessarily relate to the same time frame under consideration by Dr. Bergstein. Second, there was no showing in the record that the chiropractor was qualified either by training or by experience to *evaluate* reports or studies made by the neurologist, whose qualifications are far different. Third, Claimant saw Dr. Kasdan on

only one visit and testified (October 4, 1990 Hearing, N.T. at 14) that he did not recall ever telling Dr. Kasdan about his involvement in two automobile accidents, one in November of 1982 when he was hit by a drunk driver, and the other in July 1988 when he was in a rear-end collision. Dr. Kasdan did not refer to the automobile accidents in his report. Finally, other portions of the Kasdan report, not offered into evidence, appear to render equivocal the above-quoted conclusion about bending or lifting restrictions.[5]

We find no error in sustaining Employer's objection to the disputed portion of the Kasdan report.

■ Claimant thirdly argues that the Board erred in not finding fault with the Referee for failing to make *specific* findings regarding the reports of Drs. Kasdan and Wachs. Both reports support Dr. Bergstein's opinion that Claimant was not capable of returning to his pre-injury employment as an auto body repairman.

■ We find that the Referee did not err in declining to make findings as to each and every item of evidence. A referee is required to make crucial findings of fact on all essential issues necessary for review by the Board and this Court, *Magayna v. Workmen's Compensation Appeal Board (Jones & Laughlin Steel Corp.)*, 115 Pa.Commonwealth Ct. 268, 539 A.2d 952 (1988), but is not required to address specifically each bit of evidence offered. Because the Referee in the case before us fulfilled his duty, we find no merit in Claimant's argument regarding the reports of Drs. Kasdan and Wachs.

5. Dr. Kasdan noted:

> He demonstrates significant abnormalities on clinical testing that do not correlate with a completely normal MR of his back and neck. He is having subjective complaints of muscle spasm that I cannot correlate with objective findings. Other than doing a regimen of exercises and perhaps losing a little weight, I can recommend no further therapeutic endeavors in a man that has been off work for this long a period of time.

March 21, 1991 Deposition of Dr. Bergstein, Exhibit B.

Dr. Kasdan also noted that Claimant's MRI was completely normal and that there was no evidence of canal stenosis, disc herniation or disc degeneration. *Id.*

██ Finally, Claimant argues that the Board erred in failing to address the Referee's determination that Claimant never submitted a fee agreement. After reviewing the record, it is clear that Claimant submitted a second bill of costs for Employer's second termination petition. In fact, in the Referee's February 28, 1989 Finding of Fact No. 11 emanating from Employer's first termination petition,[6] the bill of costs is quite different than that set forth in the current Finding of Fact No. 13. However, at no time during the proceedings does the record reflect that Claimant ever presented a second fee agreement. Thus, we find Claimant's argument in that regard to be without merit.

For the above reasons, we affirm the decision of the Board granting Employer's termination petition.

## *ORDER*

**AND NOW,** this 27th day of October, 1993, the order of Workers' Compensation Appeal Board dated March 16, 1993, at No. A92–1158 is hereby affirmed.

6. Claimant's Exhibit No. 11.