# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gregory Bear, : 
                    Petitioner : 
                                     :
          v. : No. 1272 C.D. 2015
                                       : Submitted: December 4, 2015
Workers' Compensation Appeal : 
Board (E & R Erectors, Inc.), : 
                    Respondent :

BEFORE:  HONORABLE BONNIE BRIGANCE LEADBETTER, Judge[1]
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                **FILED:  February 10, 2016**

Gregory Bear (Claimant) petitions for review of two orders of the Workers' Compensation Appeal Board (Board).  The Board affirmed the decision of a Workers' Compensation Judge (WCJ), which denied Claimant's claim petitions.  The WCJ also denied joinder petitions filed by E & R Erectors, Inc., and Chartis Insurance (collectively, Employer).  We now affirm.

Claimant was employed by Employer as an ironworker.  On May 15, 2012, Claimant filed a claim petition alleging that he had sustained a work-related injury on August 18, 2010, for which he sought total and partial disability benefits.  (Certified Record (C.R.), May 15, 2012 Claim Pet.)  In the

---

[1] This case was assigned to the opinion writer on or before January 31, 2016, when Judge Leadbetter assumed the status of senior judge.

claim petition, Claimant explained that he injured his upper and lower back while picking up a steel tube. (*Id.*) On September 10, 2012, Employer filed a joinder petition seeking to join an additional insurance carrier, Old Republic General Insurance Corporation (Old Republic). (C.R., Sept. 10, 2012 Joinder Pet.) Employer contended that Old Republic was the insurance carrier for E & R Erectors, Inc., for construction sites other than the Philadelphia Convention Center site.[2] (*Id.*) Claimant filed an additional claim petition on October 25, 2012, alleging that he had sustained lower and upper back injuries on May 10, 2011, for which he sought partial disability benefits. (Reproduced Record (R.R.) at 1a-3a.) Claimant contended that he was injured on the Resort World Casino Project construction site while he was picking up a steel tube. (*Id.* at 2a.) Employer filed an additional joinder petition on April 1, 2013, again seeking to join Old Republic as a defendant. (C.R., April 1, 2013 Joinder Pet.) The WCJ conducted a hearing concerning the claim and joinder petitions.

Claimant was the only witness to testify in person at the hearing before the WCJ. Claimant testified that he was employed by Employer for thirty-one years. (R.R. at 245a.) His job involved strenuous physical activity. (*Id.* at 244a.) Claimant, relying on logbooks he created during his employment with Employer, testified that there were no gaps in his service to Employer from August 1, 2009, through the end of 2009. (*Id.* at 248a-49a.) On August 18, 2010, Claimant was working at the Philadelphia Convention Center site. (*Id.* at 252a, 276a.) Claimant injured his back as he was lifting steel tubes, which weighed over

---

[2] Claimant, in his claim petition, alleged that the injury took place on Employer's premises, but he did not identify a specific construction site.

one hundred pounds. (*Id.* at 252a.) Claimant could not continue to work, and he informed his steward that he needed medical attention. (*Id.* at 253a.) Claimant was treated at Hahnemann Hospital and received a prescription for pain medication, but he was able to return to work later that day. (*Id.*) Claimant attended a follow-up appointment at Hahnemann Hospital and received prescriptions for pain medication from his family doctor, but he sought no other treatment. (*Id.* at 255a, 257a-58a.) After the injury occurred, Claimant was placed on light duty work. (*Id.* at 255a.) Claimant testified that Employer had no light duty work available for Claimant, so Employer laid off Claimant until November 29, 2010. (*Id.* at 255a-56a.) Claimant remained on light duty work until January 2011, when he was able to return to full duty work. (*Id.* at 258a.) On May 10, 2011, Employer sent Claimant to work at a casino construction site in New York. (*Id.* at 261a.) Employer instructed Claimant to search for missing pieces of steel, which weighed between twenty and two hundred pounds. (*Id.* at 264a, 287a.) While performing this search, Claimant was in pain and his "whole left side was numb." (*Id.* at 265a.) The next morning, Claimant was unable to get out of bed. (*Id.*) Following his injury on May 10, 2011, Claimant retired and "went out on pension disability." (*Id.* at 269a.) Claimant's counsel referred him to Ronald Abraham, D.O., for treatment, and Claimant ultimately sought continued medical treatment at Grandview Hospital. (*Id.* at 272a, 274a.)

On cross-examination, Claimant explained that he has had back pain for twenty years. (*Id.* at 299a.) Prior to the first injury on August 18, 2010, Claimant sought treatment from a chiropractor, Daniel Young, D.C., whom he saw regularly. (*Id.* at 300a-01a.) Claimant also had an MRI prior to August 18, 2010, but he had not missed work for back pain, nor had he been prescribed any

3

medication. (*Id.*) Claimant could not recall how his back felt immediately before his injury on August 18, 2010. (*Id.* at 301a.) Prior to his second injury on May 10, 2011, Claimant sought treatment from Dr. Young, because he "hurt all over" and thought his back needed adjustment. (*Id.* at 277a.) Claimant could not recall if he sought treatment the day after he sustained his second injury. (*Id.* at 305a.)

Claimant also presented the deposition testimony of Maxwell Stepanuk, Jr., D.O. Dr. Stepanuk testified that he is board certified in orthopedic surgery. (*Id.* at 63a.) Dr. Stepanuk examined Claimant on October 23, 2012, and reviewed Claimant's medical records. (*Id.* at 64a.) Claimant's medical records revealed a history of back pain going back to at least 2006. (*Id.* at 65a.) In 2006, Claimant received an MRI revealing "a disc bulge at L5 with some facet arthritis with a possibility of a spondylolysis at L5." (*Id.* at 66a.) Claimant also received ongoing chiropractic treatment from Dr. Young. (*Id.* at 67a.) Dr. Stepanuk testified that on August 18, 2010, Claimant "experienced a sharp pain in his back with pain radiating down his left leg" as Claimant picked up a heavy piece of steel. (*Id.* at 67a, 83a.) After this injury, Claimant initially returned to work on light duty, but later he was able to resume working full duty. (*Id.* at 68a.)

In his report, Dr. Stepanuk indicated that Claimant sustained another injury in April 2011. (*Id.* at 129a.) Claimant resumed treatment with Dr. Young for "back problems and pain down the leg." (*Id.* at 68a.) Dr. Young ordered an updated MRI on April 7, 2011, which showed "a new finding of a disc herniation at L5." (*Id.* at 70a.) Dr. Young then referred Claimant to Scott Loev, D.O., who examined Claimant on April 26, 2011, and gave Claimant epidural injections to the low back for pain. (*Id.*) Dr. Stepanuk testified that Claimant experienced a

4

progression of his low back and left leg pain on May 10, 2011, after Claimant did a "considerable amount" of walking and lifted steel. (*Id.* at 72a.) After his examination of Claimant on October 23, 2012, Dr. Stepanuk diagnosed Claimant with "a chronic lumbar strain and sprain, a herniated nucleus pulposus at L5 and a left lower extremity radiculopathy." (*Id.* at 75a.) Dr. Stepanuk opined that the cause of these conditions was "accumulative trauma beginning in 2006 secondary to working as an ironworker." (*Id.* at 76a.) In his report, however, Dr. Stepanuk opined that Claimant's herniated disc was caused by a work-related injury in April 2011. (*Id.* at 137a.) Dr. Stepanuk explained that Claimant was permanently disabled as a result of these conditions and that Claimant's work duties were the cause of this disability. (*Id.* at 76a.)

On cross-examination, Dr. Stepanuk acknowledged that Dr. Young's medical records from 2007 demonstrated that Claimant did not represent to Dr. Young that his back condition was the result of a work-related injury. (*Id.* at 89a-90a.) Claimant's August 2010 medical records from Hahnemann Hospital demonstrated that Claimant did not complain of low back or L5 pain. (*Id.* at 83a-84a.) Claimant's disc herniation did not occur in August 2010, because Claimant was able to return to work. (*Id.* at 87a.) Dr. Stepanuk explained that although Claimant indicated that he had been injured in April 2011, Claimant's medical records revealed no such injury. (*Id.* at 86a.) He further testified that he knew of no specific incident involving Claimant in April 2011, other than an increase in Claimant's back pain. (*Id.* at 90a.) Dr. Stepanuk admitted that Claimant's medical history as provided in Dr. Stepanuk's medical report was incorrect insofar as Dr. Stepanuk reported that Claimant was injured lifting a piece of steel in April 2011 rather than August 2010. (*Id.*) The incorrect history was a

5

result of Claimant's representations to Dr. Stepanuk that Claimant was injured by lifting a piece of steel in April 2011, and was inconsistent with Claimant's testimony at the hearing before the WCJ. (*Id.* at 91a-92a, 96a.) Although Dr. Stepanuk's report provided that Claimant's disc herniation was attributable to a work-related injury in April 2011, Dr. Stepanuk admitted that, as a result of reviewing additional medical records, he now believes that Claimant's disc herniation happened at some point between August 18, 2010, and May 10, 2011. (*Id.* at 97a-99a.) Dr. Stepanuk acknowledged that there was nothing in the documents he reviewed, other than Claimant's testimony, to indicate that Claimant had sustained an injury on May 10, 2011. (*Id.* at 106a.)

Employer presented the deposition testimony of Christian Fras, M.D., an orthopedic surgeon. Dr. Fras testified concerning Claimant's August 18, 2010 injury, and he offered no opinion as to Claimant's May 10, 2011 injury or the relationship of that injury to Claimant's ongoing conditions. (*Id.* at 152a.) Dr. Fras testified that he performed an independent medical evaluation (IME) of Claimant on January 3, 2013, and that he had reviewed Claimant's medical records. (*Id.* at 137a.) Medical records pertaining to an MRI performed on Claimant in 2005 provided that there was "an indication of bilateral L5 pars defect," which Dr. Fras characterized as spondylolysis, or, in other words, "a fracture of the portion of the vertebra of L5." (*Id.* at 144a.) Dr. Fras noted that Claimant has received treatment for back and knee pain since 2007. (*Id.* at 137a.) Dr. Fras explained that the Hahnemann Hospital medical records provided that on August 18, 2010, Claimant initially did not think that he had been injured, but that after Claimant returned home he began to experience back pain, which was "a little higher than the lower back area." (*Id.* at 138a, 188a.) During Claimant's

6

follow-up appointment at Hahnemann Hospital, Claimant indicated that he was "back to his baseline from his original visit." (*Id.* at 139a, 190a.) During the IME, Claimant reported to Dr. Fras that he was injured in the autumn of 2010. (*Id.* at 140a.) Claimant indicated that he developed low back pain while picking up a steel beam. (*Id.*) Claimant also developed left leg pain during 2010. (*Id.*) Claimant informed Dr. Fras that he was treated with three epidural steroid injections for his back pain, but that he was not receiving active treatment for his condition. (*Id.*) Claimant acknowledged that he had suffered from constant low back pain prior to 2010, but that he had no leg pain prior to 2010. (*Id.* at 140a-41a.) After his examination of Claimant, Dr. Fras opined that Claimant suffered from "degenerative conditions afflicting his lumbar spine including L5 spondylolysis and L5-S1 spondylolisthesis," but that these diagnoses were unrelated to any work injury. (*Id.* at 142a.) Dr. Fras further explained that Claimant's back and leg pain were unrelated to the August 18, 2010 injury. (*Id.*) Dr. Fras noted that Claimant's work history after the August 18, 2010 injury suggested that Claimant had recovered from any injury he may have sustained. (*Id.* at 143a.)

Old Republic presented the deposition testimony of Robert Mauthe, M.D., a physiatrist. Dr. Mauthe testified that he reviewed Claimant's medical records and performed an IME of Claimant on February 5, 2013. (*Id.* at 199a.) During the IME, Claimant told Dr. Mauthe that he had suffered from back pain since 2006, and that he had treated with chiropractors. (*Id.*) On August 18, 2010, Claimant experienced back pain while picking up a piece of steel. (*Id.*) Claimant did not immediately feel numbness and tingling, but these symptoms developed later. (*Id.*) Claimant returned to work without restrictions by August 26, 2010, but

7

he developed additional back and leg pain in April and May 2011. (*Id.*) Claimant attributed his symptoms to the injuries which occurred on August 18, 2010, and May 10, 2011. (*Id.* at 200a.) After conducting the IME, Dr. Mauthe opined that "work activities on or about [May 10, 2011,] is the substantial and material factor that aggravated his condition such that he could no longer work." (*Id.* at 228a.) In reviewing medical records received after he conducted the IME, however, Dr. Mauthe noted that the records of Claimant's family doctor indicated that the numbness in Claimant's leg was the result of an injury that occurred in March 2011 while Claimant was exercising on an elliptical machine. (*Id.* at 203a.) Claimant had not told Dr. Mauthe of this incident, nor did he attribute the numbness in his leg to anything other than the work injury on May 10, 2011. (*Id.*) Dr. Mauthe diagnosed Claimant with an L5, S1 disc herniation with radiculopathy. (*Id.* at 202a.) Dr. Mauthe opined that the numbness was attributable to Claimant's disc herniation, and, therefore, the cause of the disc herniation was the exercise injury in March 2011, which coincides with the onset of the numbness. (*Id.* at 203a.) Dr. Mauthe further explained that Claimant's disc herniation and lumbar spine problems were not caused by Claimant's work activities. (*Id.*) Rather, Dr. Mauthe testified that "the spinal literature would all show that hard work is preventative, if anything, of the development of lumbar spine problems." (*Id.*)

The WCJ issued a decision denying Claimant's claim petitions and Employer's joinder petitions. In so doing, the WCJ summarized the witnesses' testimony and made the following credibility determinations:

> 5. To the extent the Claimant testified that he has had back pain for 20 years, his testimony is credible; however, to the extent he testified that specific events in August of 2010 and May of 2011 led to his continuing problems, his testimony is unpersuasive. We note that the Claimant is a poor historian. The medical records do

8

not reflect a history consistent with that of the Claimant's testimony.

6. To the extent the medical experts disagree, the opinions of Drs. Fras and Mauthe are more credible than those of Dr. Stepanuk. We note that Dr. Stepanuk was forced to amend significant opinions expressed in his report after his single examination of the Claimant. Claimant offered no testimony from any physician who actually treated him, despite seeing numerous physicians over many years for back pain. The opinions of Drs. Mauthe and Fras are consistent with objective medical records and with the credible portion of Claimant's testimony concerning 20 years of back pain.

(WCJ Op. at 5-6.) Claimant appealed to the Board, which issued orders affirming the WCJ's decision as to both of Claimant's claim petitions. Claimant then petitioned this Court for review.

On appeal,[3] Claimant argues that the WCJ capriciously disregarded the testimony of Drs. Stepanuk, Mauthe, and Fras that Claimant sustained an injury on August 18, 2010. Claimant also contends that the WCJ capriciously disregarded Claimant's logbook entries, which indicate that Claimant worked without restrictions from January 2011 through May 10, 2011.

We first address Claimant's argument that the WCJ capriciously disregarded the testimony of Drs. Stepanuk, Mauthe, and Fras that Claimant sustained an injury on August 18, 2010. "[C]apricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court." *Leon E.*

---

[3] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

9

*Wintermyer v. Workers' Comp. Appeal Bd. (Marlowe)*, 812 A.2d 478, 487 (Pa. 2002). Capricious disregard, however, is found only where a WCJ deliberately and baselessly disregards evidence that is apparently trustworthy. *Williams v. Workers' Comp. Appeal Bd. (USX Corp.–Fairless Works)*, 862 A.2d 137, 144 (Pa. Cmwlth. 2004). "[W]here there is substantial evidence to support an agency's factual findings, and those findings in turn support the conclusions, it should remain a rare instance in which an appellate court would disturb an adjudication based upon the capricious disregard of material, competent evidence." *Id.*

Claimant appears to take issue with the WCJ's rejection of Claimant's testimony that the incident which occurred on August 18, 2010, contributed to the Claimant's disability, as well as the WCJ's conclusion that Claimant did not sustain his burden of proving a disabling injury. Claimant identifies portions of the testimony of Drs. Stepanuk, Mauthe, and Fras, in which the medical experts testify as to an injury which occurred on August 18, 2010. Claimant, therefore, contends that the WCJ capriciously disregarded evidence that the Claimant injured his back at work on August 18, 2010.

Claimant mischaracterizes the WCJ's decision, as the WCJ made no findings as to whether Claimant was injured at work on August 18, 2010.[4] Rather, the WCJ explained that "Claimant has failed to prove through substantial, competent, and expert opinion, herein found credible, that he sustained any disabling injury." (WCJ Op. at 6.) "[I]n a claim proceeding, the [claimant] bears

---

[4] We note that the WCJ, in summarizing the witnesses' testimony, provided that all of the witnesses testified as to the incident which occurred on August 18, 2010. (WCJ Op. at 1-5.) The WCJ made no findings as to whether the incident did, in fact, occur, as such a finding was not essential to the WCJ's ultimate conclusion that Claimant failed to sustain his burden of proof.

the burden of establishing a right to compensation and of proving all necessary elements to support an award." *Inglis House v. Workmen's Comp. Appeal Bd. (Reedy)*, 634 A.2d 592, 595 (Pa. 1993). A claimant, therefore, "must prove a causal relationship between a work-related incident and a disability." *Somerset Welding and Steel v. Workmen's Comp. Appeal Bd. (Lee)*, 650 A.2d 114, 117 (Pa. Cmwlth. 1994), *appeal denied*, 659 A.2d 990 (Pa. 1995). The material question in the instant matter, therefore, is whether the Claimant was *disabled* as a result of a work injury, and not, as Claimant suggests, whether Claimant was simply injured at work. Although all three medical experts testified to an injury which occurred on August 18, 2010, two of those experts—Drs. Mauthe and Fras—opined that Claimant was not disabled as a result of that injury.[5] Dr. Stepanuk's and Claimant's testimony, indicating that Claimant sustained a disabling work injury, was rejected by the WCJ as not credible. Rather, the WCJ determined that the testimony of Drs. Mauthe and Fras was more credible than that of Dr. Stepanuk. This Court will not disturb the WCJ's credibility determinations on appeal. *See Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003). Absent credible testimony to the contrary, Claimant could not sustain his burden to prove that he was disabled as a result of a work injury. It was not essential for the WCJ to find that Claimant was not injured at work for the WCJ to conclude that Claimant did not sustain his burden of proving the causal relationship between an injury and his disability. Evidence that Claimant did

---

[5] As summarized above, Dr. Mauthe believed that Claimant's disability was attributable to Claimant's exercise injury in March 2011. (R.R. at 203a.) Dr. Fras attributed Claimant's back and knee pain to L5-S1 spondylolisthesis and L5 spondylolysis, and he explained that these conditions were not caused by work activities. (*Id.* at 142a, 187a.)

sustain such an injury was, therefore, immaterial to the WCJ's conclusion. We, therefore, reject Claimant's argument that the WCJ capriciously disregarded the testimony of Drs. Stepanuk, Mauthe, and Fras that Claimant sustained an injury on August 18, 2010.[6]

We next address Claimant's argument that the WCJ capriciously disregarded the Claimant's logbook entries. Specifically, Claimant contends that these logbooks demonstrate that Claimant was not experiencing back pain that prevented him from working full duty from January 2011 through May 10, 2011. Claimant argues that the WCJ did not mention the logbooks in rendering his decision, and, thus, the WCJ capriciously disregarded the logbooks. A WCJ, however, does not need to address every detail of the evidence in the record. *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 194 n.4 (Pa. Cmwlth. 2006), *appeal denied*, 916 A.2d 635 (Pa. 2007). A WCJ's duty is

---

[6] Claimant also argues that the "Board erred by holding that both Dr. Mauthe and Dr. Fras 'unequivocally testified' that the Claimant did not sustain any work injury." (Claimant Br. at 16.) The Board, however, made no such holding. Rather, the Board, in explaining the WCJ's conclusion, provided:

> Claimant was unable to meet his burden because the [WCJ] rejected both Claimant and Dr. Stepanuk's testimony as to either the work incidents of August 18, 2010 or May 10, 2011 causing any type of work injury. Instead, the [WCJ] accepted the unequivocal medical testimony of both Dr. Mauthe and Dr. Fras that Claimant did not sustain any work injury.

(Bd. Op. at 4.) Although the Board's opinion appears to suggest that Drs. Mauthe and Fras testified that Claimant sustained no injuries at work, the Board's opinion is, if anything, a mischaracterization of the WCJ's credibility determinations. The Board did not purport to usurp the WCJ's role as fact-finder so as to render its own factual findings and credibility determinations. Rather, the Board, in affirming the WCJ's decision, explained that the WCJ did not err in concluding that Claimant did not sustain his burden of proof, because credible evidence did not exist to support Claimant's position. We, therefore, discern no reversible error.

"to make crucial findings of fact on all essential issues necessary for review by the Board and this Court." *Pistella v. Workmen's Comp. Appeal Bd. (Samson Buick Body Shop)*, 633 A.2d 230, 234 (Pa. Cmwlth. 1993).

There is no indication that the WCJ disregarded Claimant's logbooks, despite the fact that the logbooks were not mentioned in the WCJ's decision. During the hearing before the WCJ, Claimant relied on the contents of the logbooks to refresh his recollection as to his work history from 2009 through 2011. Claimant agreed that the logbooks were "better than any recollection" he had, and he had difficulty recalling certain events without first reviewing the logbooks. (R.R. at 252a, 259a.) Claimant testified that he returned to full duty work in January 2011. (*Id.* at 258a.) There was no testimony that Claimant was on light duty from January 2011 through May 10, 2011. In summarizing Claimant's testimony, the WCJ noted that Claimant returned to work full duty in January 2011. (WCJ Op. at 2.) The WCJ did not describe any intervening periods of light duty work between January 2011 and May 10, 2011. (*Id.*) The evidence which Claimant argues was contained in the logbooks was well-represented in the Claimant's testimony and the WCJ's summarization of that testimony. We, therefore, reject Claimant's argument that the WCJ capriciously disregarded the Claimant's logbook entries.

Within his argument concerning the WCJ's capricious disregard of the logbooks, Claimant also takes issue with Dr. Mauthe's opinion that Claimant's disability was attributable to the exercise injury in March 2011, rather than Claimant's work injury on May 10, 2011. Claimant appears to argue that the WCJ erred in accepting Dr. Mauthe's opinion. Specifically, Claimant argues that

13

Dr. Mauthe's opinion is not supported by medical evidence demonstrating that "Claimant had any difficulty working due to back pain." (Claimant Br. at 19.)

"While an expert witness may base an opinion on facts of which he has no personal knowledge, those facts must be supported by evidence of record." *Newcomer v. Workmen's Comp. Appeal Bd. (Ward Trucking Corp.)*, 692 A.2d 1062, 1066 (Pa. 1997). Here, although there was no evidence presented that Claimant's work from January 2011 through May 10, 2011, was restricted due to his back pain, Dr. Mauthe based his opinion on the evidence of record. Specifically, Dr. Mauthe explained that Claimant's medical records provided that Claimant began to feel numbness in his leg while exercising.[7] Because the numbness of Claimant's leg was attributable to Claimant's disc herniation, Dr. Mauthe opined that the disc herniation occurred when Claimant began to feel numbness—namely, in March 2011, rather than May 10, 2011. Although Claimant testified that he did not begin to feel numbness until May 10, 2011, the WCJ rejected Claimant's testimony as not credible. Dr. Mauthe's opinion, although not consistent with Claimant's preferred version of the facts, is supported by medical evidence of record. We, therefore, reject Claimant's argument that Dr. Mauthe's opinion is not supported by medical evidence.

---

[7] The medical record, dated August 9, 2011, provides in relevant part:

> Mr. Bear is a 50 y/o WM who presents today with c/o L leg/foot numbness x 5 months. He describes first developing numbness in his L lateral thigh, lower leg, and lateral toes while on an elliptical machine in March 2011. Since this time, the numbness has been constant.

(R.R. at 220a.)

Accordingly, we affirm the Board's orders.


_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gregory Bear,              :
           Petitioner     :
                      :
       v.               :    No. 1272 C.D. 2015
                      :
Workers' Compensation Appeal    :
Board (E & R Erectors, Inc.),      :
           Respondent    :

## **O R D E R**

AND NOW, this 10th day of February, 2016, the orders of the Workers' Compensation Appeal Board, docketed at A14-1072 and A14-1073, are hereby AFFIRMED.

<br><br>

_____
P. KEVIN BROBSON, Judge