IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Judith Carbonell-Caban,         :
                Petitioner   :
                               :
      v.                    :  No. 133 C.D. 2021
                               :  Submitted: July 2, 2021
Elwyn, Inc. (Workers' Compensation :
Appeal Board),              :
                               :
              Respondent   :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ELLEN CEISLER, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER                            FILED: May 18, 2022

Judith Carbonell-Caban (Claimant) petitions this Court for review of the January 20, 2021 order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a workers' compensation judge (WCJ) denying Claimant's petition seeking reinstatement of benefits under the Workers' Compensation Act (Act)[1] and an amendment to the description of her work injury, and denying Claimant's request for penalties based on alleged violations of the Act by Elwyn, Inc. (Employer).[2] The WCJ also granted Employer's petitions requesting suspension

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

[2] Claimant also petitions for review of the Board's October 8, 2019 order, which affirmed in part a May 25, 2018 decision of the WCJ that also denied Claimant's petition and granted Employer's suspension and termination petitions. Certified Record (C.R.), Item No. 14, Board Decision, 10/8/19, at 17. The Board vacated the May 25, 2018 decision as to Claimant's request for penalties and remanded the matter for additional factfinding on Employer's alleged violations of the Act. *Id.* The Board also directed the WCJ to determine whether Claimant was entitled to additional weeks of workers' compensation benefits for periods of time her treating physician took

**(Footnote continued on next page…)**

and termination of Claimant's benefits. Claimant argues on appeal that the WCJ's decision was arbitrary, capricious, and not well reasoned. After review, we affirm the Board.

## I. Background

Claimant sustained a work injury on April 16, 2015, as the result of a motor vehicle accident (MVA) that occurred in the course of Claimant's employment as a service coordinator for Employer. C.R., Item No. 25. Employer initially accepted liability for the work injury on May 8, 2015, through issuance of a medical-only Notice of Temporary Compensation Payable (NTCP), which described Claimant's work injury as a strain to her right wrist, low back, and neck. *Id.* A second NTCP filed on May 13, 2015, indicated that Claimant would receive total disability benefits at a bi-weekly rate of $579.93, based on an average weekly wage (AWW) of $869.89. *Id.*, Item No. 26. Thereafter, Employer denied liability for Claimant's work injury through a Notice Stopping Temporary Compensation (NSTC) and a Notice of Compensation Denial (NCD), filed on May 19, 2015. *Id.*, Item Nos. 27-28. The NCD, which described Claimant's injury solely as a right wrist strain, contested the extent of Employer's liability for Claimant's work injury and asserted that she had not suffered any wage loss due to the work injury; however, Employer would continue to pay the cost of any reasonable and necessary medical treatment related to the work injury. *Id.*, Item No. 28.

On October 20, 2016, Claimant filed a petition seeking reinstatement of benefits under the Act, an amendment to the description of her work injury, and the imposition of penalties for Employer's alleged violations of the Act and the rules

---

her out of work. *Id.* In its January 20, 2021 order, the Board made its October 8, 2019 order final so Claimant could pursue her appeal of that decision to this Court. *Id.*, Item No. 19, Board Decision, 1/20/21, at 8.

2

and regulations of the Department of Labor and Industry (Department).[3]  C.R., Item No. 2.  On September 20, 2017, Employer filed a petition to terminate Claimant's benefits, based on the opinion and affidavit of Stuart Gordon, M.D., that Claimant had fully recovered from her work injury.  *Id.*, Item Nos. 2, 38, Ex. 2.  Employer filed a separate petition on September 27, 2017, requesting an immediate suspension of Claimant's benefits following her receipt of a third-party recovery from the other driver involved in the April 16, 2015 MVA, the proceeds of which Claimant failed to forward to Employer in satisfaction of its accrued workers' compensation lien.  *Id.*, Item No. 7.  Claimant denied that she had fully recovered from her work injury.  *Id.*, Item Nos. 6, 10.  Regarding her third-party recovery, Claimant requested a hearing to determine the extent of Employer's entitlement to its proceeds.  *Id.*, Item No. 9.

Claimant testified at the November 17, 2016 and October 12, 2017 hearings before the WCJ and presented the deposition testimony of her treating physician, Sara Tabby, M.D.  Employer presented the deposition testimony of its medical expert, Dr. Gordon, who performed an independent medical examination (IME) of Claimant on May 30, 2017.

### A. Claimant's Evidence

Claimant testified that her position with Employer involved coordinating support services for children with disabilities.  C.R., Item No. 21, Notes of Transcript (N.T.), 11/17/16, at 13.  As part of her daily job duties, Claimant drove from Employer's office to meet with its clients.  *Id.* at 13-14.  The April 16, 2015 MVA occurred when Claimant was rear-ended while driving to one such meeting.  *Id.* at 15.  Claimant sustained injuries to her neck, middle and lower back, right wrist, and

---

[3] While the decisions of the WCJ and the Board indicate that Claimant filed three petitions, the record reflects that Claimant filed a single petition, in which she sought the relief requested.

3

shoulders. *Id.* After completing her work duties for the day, Claimant drove home. *Id.* at 17. Claimant's son drove her to the emergency room for treatment, as Claimant had "a lot of" pain in her back, neck, and head. *Id.* at 17-18. Claimant was released and advised to follow up with her primary care physician (PCP), who took Claimant out of work for two weeks. *Id.* at 18-19. Thereafter, Claimant returned to her full-duty job without restrictions. *Id.* at 20-21. At Employer's direction, Claimant transferred her medical care to its provider, WorkNet. *Id.* at 20. Claimant stopped treating with WorkNet after a few months and returned to her PCP, as her symptoms continued.[4] *Id.* at 21. Claimant's PCP took her out of work for an additional week. *Id.* at 23.

Claimant asserted that Employer refused to comply with the work restrictions imposed by her PCP.[5] *Id.* On February 19, 2016, Employer and Claimant memorialized an agreement for accommodating work restrictions imposed by Dr. Tabby, which Claimant presented to Employer on February 8, 2016. C.R., Item No. 29. Dr. Tabby's work restrictions limited Claimant's driving to 30 minutes per trip, and provided that she not lift more than 5 pounds or sit for "lengthy" periods of time. *Id.* To accommodate Dr. Tabby's work restrictions, Employer agreed to provide Claimant with a cart for transporting files. *Id.* Claimant's off-site meetings would either take place on the first floor or she would receive assistance with bringing her

---

[4] Claimant testified inconsistently regarding the extent of her treatment at WorkNet, as she initially stated that she treated there "six months, almost a year," C.R., Item No. 21, N.T., 11/17/16, at 20. Later, Claimant testified that she stopped going to WorkNet in "July." *Id.* at 21. Presumably, Claimant left WorkNet in July 2015, as she began treating with Dr. Tabby at that time. C.R., Item No. 35, Tabby Deposition, at 11.

[5] Although it appears that Dr. Tabby imposed work restrictions in February 2016, the record does not contain any documentation that Claimant's PCP ever imposed work restrictions. C.R., Item No. 29.

4

files and equipment upstairs. *Id.* Claimant's travel for meetings would be restricted to one or two sites per day, and she would not have to return to the office between meetings. *Id.* Finally, Claimant could take walking breaks, as needed, to alleviate pain from sitting, and Claimant could utilize administrative support, as offered, to lessen her workload. *Id.*

Claimant testified generally that Employer failed to comply with any of the accommodations in the February 19, 2016 agreement. N.T., 11/17/16, at 26-29. She elaborated that the drive to one of her meeting sites exceeded the 30-minute limit and "sometimes" she had to carry 3 files in her bookbag, which weighed more than 5 pounds. *Id.* at 27. Claimant also testified that she was advised it was not appropriate to walk around during meetings with a client. *Id.*

Claimant asserted that she had difficulty performing her job duties because the pain medication she was prescribed made her drowsy. *Id.* at 21. She had to finish work at home, and she had difficulty sleeping at night due to stress. *Id.* at 33-34. Claimant stopped working for Employer on July 26, 2016, as she continued to have pain in her back, and she could no longer perform her job duties. *Id.* at 36. Claimant does not believe she could return to her pre-injury position because she cannot travel. *Id.* at 37. During cross-examination, Claimant agreed that the pain symptoms in her back and right wrist had improved "a little[.]" *Id.* at 44. Claimant also agreed that she received her regular wages throughout the period she worked for Employer. *Id.* at 31.

At the October 12, 2017 WCJ hearing, Claimant testified that she continues to suffer pain in her back that radiates down her right leg. N.T., 10/12/17, at 12. Claimant also stated that she is unable to move her neck fully to the right or the left. *Id.* After she stopped working for Employer in July 2016, Claimant received short-

term disability through May 2017. *Id.* at 11. She currently works part time as a motivational counselor at LaSalle University (LaSalle) earning $620 bi-weekly.[6] *Id.* at 10, 14. Claimant advised that this position does not require that she walk up and down stairs or carry heavy boxes of records. *Id.* at 11. She only works two and one-half hours per day, three days a week, and her husband drives her to and from LaSalle. *Id.* Claimant stated that her treating physician, Dr. Tabby, has not released her to full-duty work; however, Claimant conceded during cross-examination that she never advised Dr. Tabby that she worked part-time at LaSalle. *Id.* at 10, 13.

Dr. Tabby testified that she practices physical medicine and rehabilitation, and she first evaluated Claimant in July 2015. C.R., Item No. 35, Tabby Deposition, 3/6/17, at 6, 11. At that time, Claimant presented with pain upon palpation of her cervical and lumbar spinal muscles, and pain with motion, bending, turning, and flexing. *Id.* at 12. Claimant had some limitation in the range of motion in her shoulders, she expressed pain in her right wrist, and she had difficulty walking on her heels and toes. *Id.* Dr. Tabby noted a positive finding for sciatica in Claimant's lower extremities. *Id.* Based on Claimant's symptoms, Dr. Tabby diagnosed Claimant with lumbar sprain and bilateral L5 radiculopathy, and cervical sprain with radiculopathy. *Id.* at 15. Dr. Tabby recommended that Claimant continue physical therapy and she ordered Claimant a transcutaneous electrical nerve stimulation unit. *Id.* at 16. Dr. Tabby also ordered an electromyography (EMG) study, the results of which confirmed Claimant's bilateral L5-S1 radiculopathy. *Id.* at 16-17. A subsequent EMG of Claimant's upper extremities performed on September 2, 2015, detected bilateral C5-C7 radiculopathy. *Id.* at 21. Dr. Tabby prescribed Claimant a muscle relaxant, a lumbar brace, and advised that she take ibuprofen for pain and

---

[6] Claimant's pay records from LaSalle indicate that she began working there as early as December 21, 2015. C.R., Item No. 39.

continue physical therapy. *Id.* at 22. Claimant did not require any work restrictions at that time. *Id.* at 21.

In preparing for her deposition testimony, Dr. Tabby reviewed magnetic resonance imaging (MRI) studies of Claimant's lumbar and cervical spine taken on May 28, 2015. *Id.* at 23-24. She advised that the MRIs revealed a disc protrusion at L4-L5 and a disc herniation at L5-S1, which correlated to her findings from the EMGs. *Id.* at 23.

Dr. Tabby opined that Claimant's symptoms related to the April 16, 2015 work injury based on Claimant's assertion that she did not experience those symptoms prior to that date. *Id.* Dr. Tabby further "made the assumption" that Claimant's bilateral L5-S1 radiculopathy related to the work injury "because it corresponded to her pain." *Id.* at 20. Dr. Tabby also "assum[ed]" that the findings from the May 28, 2015 MRIs related to the April 16, 2015 work injury. *Id.* She noted that the MRI of Claimant's cervical spine detected the presence of bulging discs at C2-C7. *Id.* at 24. Dr. Tabby felt that this condition likely preexisted the work injury but the work injury aggravated that condition. *Id.* She did not believe Claimant's condition had changed significantly, despite treatment, because Claimant continued to complain of "constant pain," which was exacerbated by prolonged standing and walking. *Id.* at 25-26. Given the lack of progress in reducing Claimant's pain symptoms, Dr. Tabby referred Claimant to pain management, where she received epidural blocks. *Id*. at 26*.* Dr. Tabby acknowledged that she took Claimant out of work periodically between August 2015 and December 2016, and that Claimant returned to full duty each time. *Id.* at 29-30. In December 2016, Dr. Tabby took Claimant out of work for a month to "concentrate on just getting better[.]" *Id.* at 31.

As of March 6, 2017, the date of her deposition, Dr. Tabby did not believe Claimant could return to full-duty work, due to the strain on her back from driving and carrying records up and down stairs. *Id.* at 32. She was not aware that Claimant had taken a part-time job with LaSalle; however, she had no objection to Claimant working, provided that she lifted no more than 10 pounds, that she restrict driving to 15 or 20 minutes at a time, and that she be allowed frequent breaks to sit, stand, or walk "when she has pain." *Id.* at 32-33. These work conditions encompassed the injury to Claimant's right wrist. *Id.* at 37. Dr. Tabby conceded that her treatment of Claimant's right wrist consisted of "ordering therapy and a wrist splint at some time[.]" *Id.*

During cross-examination, Dr. Tabby conceded that she only reviewed the MRI reports, and she did not see the actual films. *Id.* at 37. She also acknowledged that she had not reviewed the records from Claimant's PCP, or from the pain management treatment provider to which she referred Claimant, and that she only reviewed the notes from WorkNet on the date of her deposition. *Id.* at 34. She did not believe any further review was necessary, because "the bottom line" was whether a particular treatment worked. *Id.* at 38. Dr. Tabby agreed that Claimant's range of motion had improved, and she had "some improvement in her pain level[,]" but she felt that Claimant had plateaued, and that Claimant's current condition was permanent. *Id.* at 39-40.

**B. Employer's Evidence**

Dr. Gordon, an orthopedic surgeon, examined Claimant on March 30, 2017. C.R., Item No. 38, Gordon Deposition at 7. At that time, Claimant presented with severe neck and low back pain and "minimal symptoms in her [right] hand and wrist area." *Id.* at 8. Dr. Gordon felt that Claimant's pain symptoms were not consistent

with "any type" of radiculopathy, as "she had no radiating symptoms of any definitive degree." *Id.* On physical examination, Dr. Gordon did not detect any spasm in Claimant's cervical or lumbar area, and Claimant had full range of motion in her cervical spine. *Id.* at 9-10. Claimant's reflexes were normal, as were her shoulders, aside from mild tenderness in the right trapezius. *Id.* at 10. Dr. Gordon noted that Claimant had "vague soreness" in the dorsum of her right wrist, but she had full range of motion in her right wrist and elbow. *Id.* at 11. Claimant's hips were normal but her voluntary range of motion in the lower back was very limited. *Id.* at 12. The results of Claimant's straight leg test, which is utilized to detect nerve compression, were "completely normal[.]" *Id.* at 13.

Dr. Gordon reviewed Claimant's diagnostic studies and medical records from her hospital visit following the April 16, 2015 work injury, as well as records from Dr. Tabby and WorkNet. *Id.* at 14. He opined that Claimant's May 28, 2015 MRIs documented degenerative changes at L4-L5 and L5-S1, a small herniation at S1, a small, midlevel disc bulge in Claimant's cervical spine, which Dr. Gordon described as a common finding, and mild tendonitis in her right wrist, but no injury to the bone, tissue, or joints. *Id.* at 14-16. Dr. Gordon found no evidence of nerve root compression or radiculopathy. *Id.* at 14, 16. A December 17, 2015 MRI revealed improvement at the L5-S1 level. *Id.* at 15.

Based on his review of Claimant's medical records and his physical examination, Dr. Gordon opined that Claimant's work injury consisted of a cervical and lumbar strain and a right wrist strain, from which Claimant had fully recovered. *Id.* at 17. Overall, Dr. Gordon found that Claimant's physical presentation at the IME was "out of proportion" to the objective findings in her MRIs and EMGs, and to the "mechanism of injury." *Id.*, Ex. 2 at 3. Dr. Gordon felt that Claimant could

9

return to her pre-injury job, which he understood involved driving Employer's clients to appointments, without the need for any restrictions. Gordon Deposition at 17-18. Dr. Gordon agreed during cross-examination that he had not reviewed any diagnostic studies of Claimant's spine that predated the April 16, 2015 work injury. *Id.* at 21.

### C. First WCJ Decision

In a May 25, 2018 decision, the WCJ credited Claimant's live testimony, although she noted that the primary issue to be resolved was "medical in nature." C.R., Item No. 11, Finding of Fact (F.F.) No. 17. As to the medical testimony, the WCJ credited the opinions of Dr. Gordon over those of Dr. Tabby, in part due to Dr. Gordon's expertise as an orthopedic surgeon. F.F. No. 18(a)-(b). Dr. Gordon's opinions were found to be consistent, well reasoned, logical, and supported by Claimant's medical records and history. F.F. No. 18(e). The WCJ noted that Dr. Tabby did not review the medical records of other providers who treated Claimant following the work injury, and her opinions regarding causation were equivocal. F.F. No. 18(c). Dr. Tabby's opinions also conflicted with the objective findings in Claimant's December 17, 2015 MRI, which indicated that the condition of Claimant's lumbar spine at L5-S1 had improved. F.F. No. 18(d).

The WCJ found that, as a result of the April 16, 2015 work injury, Claimant sustained cervical, lumbar, and right wrist strains, and that Claimant had fully recovered from the work injury as of March 30, 2017. F.F. Nos. 19-20. Claimant returned to work on May 2, 2015, and continued to work until July 26, 2016, during which period she suffered no wage loss. F.F. No. 21. The WCJ noted that Claimant did miss additional periods of work between May 4, 2015, and July 26, 2016; however, the record did not document the specific periods missed due to the work

injury. F.F. No. 22. Accordingly, the WCJ reinstated Claimant's benefits for the period of July 26, 2016, through March 30, 2017, with statutory interest imposed on all past due compensation. F.F. No. 26. Employer was responsible for the payment of all reasonable and necessary medical treatment related to the work injury through March 30, 2017. F.F. No. 28. Employer was entitled to a credit for Claimant's receipt of short-term disability benefits, which were fully funded by Employer, as well as the wages she earned from LaSalle. *Id.*, F.F. Nos. 23-24, 27. The WCJ recognized that Claimant obtained a $15,000 third-party settlement, which was "woefully insufficient" to reimburse Employer for its payment of workers' compensation benefits; however, Employer received the third-party settlement proceeds to which it was entitled on January 22, 2018. *Id.*, F.F. No. 25.

The WCJ granted Employer's termination petition, effective March 30, 2017, the date of Dr. Gordon's IME, and granted Employer's suspension petition, based on Claimant's receipt of a third-party settlement. C.R., Item No. 11, WCJ Decision at 14. The WCJ denied Claimant's request to amend the description of her work injury and her request for penalties. *Id.*

Claimant appealed to the Board, challenging the WCJ's assessment of Dr. Tabby's qualifications and her characterization of Dr. Tabby's opinions as equivocal. C.R., Item No. 12. Claimant questioned the WCJ's description of the third-party settlement as "woefully insufficient[,]" and she suggested that the amount of the third-party settlement influenced the WCJ's decision to terminate Claimant's benefits. *Id.* She also challenged the WCJ's decision to grant Employer's suspension petition, as Employer had already received the proceeds of the third-party settlement. *Id.* Finally, Claimant argued that the WCJ erred in failing to award benefits for those weeks she was taken out of work by Dr. Tabby. *Id.*

11

The Board found no error in the WCJ's decision to deny Claimant's petition seeking an amendment to the description of her work injury, or to grant Employer's termination petition, as those decisions relied on the WCJ's credibility determinations. C.R., Item No. 14, Board Decision at 11. As for Employer's suspension petition, the Board agreed it was rendered moot by Claimant's payment of the proceeds from her third-party settlement. *Id.* at 14. While the Board felt that the word "woefully" held a negative connotation, and the WCJ's use of the word "was not necessary," the Board did not discern any bias or improper motive on the WCJ's part, as Employer was entitled to the entirety of Claimant's settlement. *Id.*

The Board agreed with Claimant that Dr. Tabby's testimony could support an award of benefits for those periods in which Claimant was taken out of work. *Id.* at 13. Therefore, the Board concluded a remand was necessary for the WCJ to consider Dr. Tabby's testimony and determine whether Claimant was entitled to additional weeks of wage loss benefits. *Id.* The Board also concluded a remand was required on the issue of penalties, as the WCJ made no findings of fact or conclusions of law regarding Employer's alleged violation of the Act. *Id.* at 16. Rather, the WCJ simply noted that Claimant "sustained her burden of proof" as to penalties and denied the petition in that regard. *Id.* In light of this contradiction, the Board vacated the WCJ's order denying penalties and remanded the matter to the WCJ for the purpose of rendering a new decision on the issue of penalties. *Id.*

### D. Second WCJ Decision

Following a December 19, 2019 remand hearing, the WCJ circulated a decision on February 3, 2020, in which she addressed the issues raised by the Board. C.R., Item No. 16, Second WCJ Decision. Having reviewed the evidence previously introduced by the parties, the WCJ found that Dr. Tabby removed Claimant from

12

work for two weeks in August 2015 and one week in December 2015. *Id.*, F.F. No. 4. The WCJ reiterated her prior finding that the record did not document the specific dates Claimant was taken out of work; however, the WCJ was able to extrapolate the information from Dr. Tabby's testimony. *Id.* Therefore, the WCJ directed that Employer pay Claimant additional wage loss benefits for the weeks she was taken out of work in August and December 2015. Conclusion of Law No. 2. The WCJ found that Employer did not violate the terms and provisions of the Act by failing to pay Claimant's benefits. F.F. No. 6. In denying Claimant's request for penalties, the WCJ considered that Employer filed the appropriate documents and had a reasonable basis for denying the claim. *Id.* Claimant appealed to the Board, which affirmed. This appeal followed.[7]

## II. Issues

Claimant argues that the Board erred in affirming the WCJ, as the evidence demonstrates that she has not fully recovered from her April 16, 2015 work injury, which Claimant maintains includes bilateral L5 radiculopathy and cervical sprain with radiculopathy, as diagnosed by Dr. Tabby. Claimant contends that the WCJ should have awarded her wage loss benefits, not only for periods in which she was taken out of work by Dr. Tabby, but beyond March 30, 2017, the date of Dr. Gordon's IRE, as Claimant was forced to take a lower paying job at LaSalle through no fault of her own. She further argues that the WCJ should have dismissed Employer's suspension petition as moot, given that she paid Employer the proceeds from her third-party settlement, and she continues to assert the WCJ demonstrated

---

[7] This Court's review is limited to determining whether the necessary findings of fact were supported by substantial evidence, constitutional rights were violated, or errors of law were committed. *Borough of Heidelberg v. Workers' Comp. Appeal Bd. (Selva)*, 928 A.2d 1006, 1009 (Pa. 2007). Where the issue presented involves a question of law, our standard of review is *de novo* and our scope of review is plenary. *Id.*

13

bias when characterizing the amount of Claimant's third-party settlement as "woefully insufficient." Claimant's Br. at 42. Finally, Claimant argues that the WCJ should have imposed penalties in light of Employer's failure to pay her wage loss benefits during periods in which Dr. Tabby took Claimant out of work and because Employer failed to comply with the agreed-upon work restrictions, as set forth in the February 19, 2016 agreement.

## III.   Discussion
## A. Review and Termination Petitions

First, we address whether the WCJ erred in denying Claimant's petition seeking an amendment to the description of her work injury, in failing to reinstate her wage loss benefits, and in granting Employer's termination petition.

Section 413(a) of the Act, 77 P.S. § 771, relevantly provides that a WCJ may modify a Notice of Compensation Payable (NCP) upon proof that the NCP is in any material respect incorrect.[8]  A review petition may be filed when a claimant seeks to amend an NCP[9] to reflect additional injuries. *Westinghouse Elec. Corp./CBS v. Workers' Comp. Appeal Bd. (Burger)*, 838 A.2d 831, 837 (Pa. Cmwlth. 2003).  The burden in such a situation falls on the claimant. *Id.*  Therefore, Claimant had the burden of establishing a causal relationship between her April 16, 2015 work injury and her lumbar and cervical radiculopathy.

---

[8] This Court has held that, where an employer files an NCD disputing a claimant's disability but not the existence of the actual injury, the NCD is given the same effect as a medical-only NCP. *Armstrong v. Workers' Comp. Appeal Bd. (Haines & Kibblehouse, Inc.)*, 931 A.2d 827, 832 (Pa. Cmwlth. 2007).

[9] Employer's NCD indicated that Claimant had not suffered a loss of wages due to the work injury.  C.R., Item No. 28.  While Employer agreed to pay Claimant's reasonable and necessary medical expenses incurred as a result of the work injury, Employer expressly contested the extent of its liability and the extent of Claimant's disability. *Id.*

14

To succeed in a termination petition, an employer bears the burden of proving by substantial evidence that a claimant's disability has ceased or that any remaining conditions are unrelated to the work injury. *Westmoreland Cnty. v. Workers' Comp. Appeal Bd. (Fuller)*, 942 A.2d 213, 217 (Pa. Cmwlth. 2008). The employer satisfies its burden when its medical expert unequivocally testifies in his opinion, within a reasonable degree of medical certainty, that the claimant has fully recovered and can return to work without restrictions and that there are no objective medical findings to substantiate the claimant's symptoms or to connect those symptoms to the work injury. *Udvari v. Workmen's Comp. Appeal Bd. (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997). The WCJ may terminate benefits only if she finds that the claimant is fully recovered from all aspects of the work injury. *Central Park Lodge v. Workers' Comp. Appeal Bd. (Robinson)*, 718 A.2d 368, 370 (Pa. Cmwlth. 1998).

In arguing that the WCJ should have amended the description of her work injury and denied Employer's termination petition, Claimant essentially argues that her medical expert was more credible than Employer's. Claimant notes that the WCJ found her credible, and she asserts that her testimony was consistent with Dr. Tabby's. As a result, Claimant contends that the WCJ should have credited Dr. Tabby's opinions over those of Dr. Gordon. Claimant's argument ignores the WCJ's recognition that, while Claimant's testimony was largely unrebutted, the "primary issue" before her was "medical in nature." C.R., Item No. 11, WCJ Decision, 5/23/18, F.F. No. 17(b). Claimant cites no legal authority for overturning the WCJ's credibility determinations. Instead, she simply characterizes Dr. Tabby's deposition testimony as credible and dismisses Dr. Gordon's testimony as "incredible, incompetent, and reflect[ing] the purpose for which he was hired." Claimant's Br. at 49-50.

15

We disagree, as it is not for Claimant to determine which expert is credible; that function is performed by the WCJ in her role as the ultimate finder of fact and the exclusive arbiter of credibility and evidentiary weight. *Lindemuth v. Workers' Comp. Appeal Bd. (Strishock Coal Co.)*, 134 A.3d 111, 125 (Pa. Cmwlth. 2016). In executing her role as factfinder, the WCJ is free to accept or reject, in whole or in part, the testimony of any witness. *Id.* It is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the inquiry before this Court is whether substantial evidence exists to support the findings actually made. *Minicozzi v. Workers' Comp. Appeal Bd. (Indus. Metal Plating, Inc.)*, 873 A.2d 25, 29 (Pa. Cmwlth. 2005). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *City of Philadelphia v. Workers' Comp. Appeal Bd. (Kriebel)*, 29 A.3d 762, 769 (Pa. 2011). When performing a substantial evidence analysis, this Court must view the evidence in a light most favorable to the party that prevailed before the factfinder. *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prod., Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998). We must also draw all reasonable inferences deducible from the evidence that supports the factfinder's decision in favor of the prevailing party. *Id.*

Furthermore, a WCJ's credibility determinations are due substantial deference and such determinations may only be overturned if they are "arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render [them] irrational." *Casne v. Workers' Comp. Appeal Bd. (Stat Couriers, Inc.)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008). As Claimant has provided no legitimate basis for this Court to overturn the WCJ's credibility determinations, we decline to do so.

We must also reject Claimant's argument to the extent she suggests that the WCJ's decision was insufficiently reasoned under Section 422(a) of the Act.[10]  A decision is "reasoned" for purposes of Section 422(a) if it allows for adequate review by the appellate courts under the applicable review standards.  *Acme Mkts., Inc. v. Workers' Comp. Appeal Bd. (Brown)*, 890 A.2d 21 (Pa. Cmwlth. 2006).  The purpose of a reasoned decision is to spare the reviewing court from having to imagine why the WCJ believed one witness over another.  *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 196 (Pa. Cmwlth. 2006).  The WCJ may not reject uncontroverted evidence without reason, or for an irrational reason, but must identify such evidence and adequately explain the reasons for its rejection.  *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043 (Pa. 2003).

In rendering her credibility determinations, the WCJ found that Dr. Gordon's opinions were more credible than Dr. Tabby's in part because he is an orthopedic surgeon with years of experience in evaluating and treating orthopedic conditions.  Dr. Tabby's opinions were found wanting because she did not review the records from Claimant's previous and contemporaneous treatment providers.  The WCJ's finding in that regard is amply supported by Dr. Tabby's concession that she did not review the medical records from Claimant's PCP, or even the pain management provider to which Dr. Tabby referred Claimant.  C.R., Item No. 35, Tabby Deposition at 34.  Moreover, Dr. Tabby only reviewed the notes of Claimant's treatment from WorkNet on the day she was deposed.  *Id.*  Dr. Tabby suggested that a review of those records was unnecessary, as "the bottom line" was the efficacy of the treatment provided.  *Id.* at 38.  Additionally, the WCJ found that Dr. Tabby's

---

[10] Section 422(a) of the Act requires the WCJ to issue a "reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions . . . ." 77 P.S. § 834.

17

testimony was equivocal because she used phrases such as "I surmised," "I am assuming," and "it is more likely than not." C.R., Item No. 11, F.F. No. 18(d).

As the WCJ clearly explained her reasons for rejecting Dr. Tabby's opinions in favor of Dr. Gordon's, we conclude that she has satisfied the reasoned decision requirement of Section 422(a) of the Act.

## B. Competency of Medical Experts

Next, we review the WCJ's finding that Dr. Tabby's opinions were equivocal. In addition to reiterating her claim that Dr. Tabby was simply more credible than Dr. Gordon, Claimant asserts that Dr. Gordon's status as an orthopedist does not render him more qualified to render an opinion than Claimant's treating physician, and she suggests that the WCJ "blatantly misstates the record" with respect to Dr. Tabby's review of Claimant's medical records. Claimant's Br. at 48. Claimant maintains that Dr. Gordon's opinions were incompetent, citing the results of his physical exam, which revealed normal results, and his subsequent acknowledgment of Claimant's "substantial" pain symptomology. *Id.* at 51. Claimant also takes issue with Dr. Gordon's lack of knowledge about the MVA that caused Claimant's work injury, his unfamiliarity with Claimant's job duties, and his failure to accept the injuries described in the first NTCP, which included Claimant's cervical and lumbar strain.

Whether expert medical testimony is unequivocal and therefore competent evidence to support a WCJ's factual determinations is a question of law fully reviewable by this Court. *Somerset Welding & Steel v. Workmen's Comp. Appeal Bd. (Lee)*, 650 A.2d 114, 117 (Pa. Cmwlth. 1994). A medical expert's testimony is unequivocal if, after providing a foundation, she testifies that she believes or thinks the facts exist, and the result in question came from the assigned cause. *Bemis v. Workers' Comp. Appeal Bd. (Perkiomen Grille Corp.)*, 35 A.3d 69, 72 (Pa. Cmwlth.

18

2011). The law does not require every utterance from a medical expert to be certain, positive, and without reservation or exception. *Id.* The use of words such as "likely" will not render an expert opinion equivocal provided that the testimony, when read in its entirety, is unequivocal and the witness does not recant the opinion or belief first expressed. *Id.* A medical expert's testimony, reviewed as a whole, is equivocal if it is based only upon possibilities, is vague, and leaves doubt. *Kurtz v. Workers' Comp. Appeal Bd. (Waynesburg Coll.)*, 794 A.2d 443, 449 (Pa. Cmwlth. 2003).

Instantly, the WCJ found that Dr. Tabby's testimony was "equivocal" because she used phrases such as "I surmised," "I am assuming," and "it is more likely than not." C.R., Item No. 11, F.F. No. 18(d). Having reviewed Dr. Tabby's testimony in its entirety, we agree her testimony as to causation was equivocal.[11]

When first asked on direct examination whether Claimant's symptoms were related to her April 16, 2015 work injury, Dr. Tabby opined that she "surmised" they resulted from the work injury because Claimant advised that she had not experienced those symptoms previous to that date. C.R., Item No. 35, Tabby Deposition at 15. Later, when discussing Claimant's EMG results, Dr. Tabby stated that she "made the assumption" of causation between the work injury and Claimant's L5-S1 radiculopathy "because it corresponded to her pain." *Id.* at 20. When asked if the "broad-based disc protrusion at L4-L5 and a midline disc herniation at L5-S1" that Dr. Tabby identified from Claimant's May 28, 2015 MRI were caused by the work injury, Dr. Tabby replied, "I am assuming it did[,]" and she "believe[d]" that condition caused Claimant's lumbar radiculopathy. *Id.* at 23-24. Dr. Tabby felt that the bulging discs in Claimant's cervical spine were "more likely" present before the

---

[11] It is noteworthy that Claimant disputes the WCJ's characterization of Dr. Tabby's testimony as equivocal, but does not substantiate her claim with citations to the record in which Dr. Tabby rendered an unequivocal opinion as to causation.

work injury, but they "were aggravated by the accident." *Id.* at 24. Aside from this last statement, it cannot be said that Dr. Tabby at any point in her deposition unequivocally testified that Claimant's ongoing issues with her cervical and lumbar spine were causally related to the April 16, 2015 work injury.

Turning to the alleged incompetency of Dr. Gordon's opinions, Claimant is correct that a WCJ may ascribe more weight to the opinion of a treating physician;[12] however, there is no requirement that she do so. A medical opinion may be rendered incompetent when made by a medical professional who lacks a complete grasp of the medical situation and/or the work incident. *Long v. Workers' Comp. Appeal Bd. (Integrated Health Serv., Inc.)*, 852 A.2d 424, 428 (Pa. Cmwlth. 2004). A medical expert's opinion is not rendered incompetent, however, unless it is *solely* based on inaccurate or false information. *Am. Contracting Enters., Inc. v. Workers' Comp. Appeal Bd. (Hurley)*, 789 A.2d 391, 396 (Pa. Cmwlth. 2001). The opinion of a medical expert must be viewed as a whole, and inaccurate information will not defeat an expert's opinion unless it is *solely* dependent on those inaccuracies. *Id.*

Dr. Gordon's March 30, 2017 IME report reflects that he understood Claimant's work injury was sustained "secondary to a rear-end accident" that occurred while driving a van for Employer. C.R., Item No. 38, Ex. 2 at 1. This recitation of the mechanism of injury is entirely consistent with Claimant's testimony that she was injured when she was hit from behind while driving to a meeting. C.R., Item No. 21, N.T., 11/17/16, at 15. As to the discrepancy between Claimant's pain symptoms and Dr. Gordon's findings upon physical examination, Dr. Gordon opined that Claimant's presentation was "out of proportion" to those

---

[12] *See D.P. "Herk" Zimmerman, Jr., Inc. v. Workmen's Comp. Appeal Bd. (Himes)*, 519 A.2d 1077, 1080 (Pa. Cmwlth. 1987) (greater credence may be given to the testimony of a treating physician than to a physician who examines simply to testify for litigation purposes).

20

findings. C.R., Item No. 38, Ex. 2 at 3. While he stopped short of accusing Claimant of symptom magnification, Dr. Gordon was unable to correlate Claimant's subjective complaints with his objective findings. Claimant had full range of motion in her cervical spine and in her right wrist and elbow. Her limited range of motion in her lumbar spine was based on her voluntary effort, and Dr. Gordon could not identify any objective evidence to explain that loss of motion. While Dr. Gordon agreed that he did not discuss the particulars of Claimant's pre-injury job beyond the driving aspect of her duties, he unequivocally opined that Claimant required no further care or treatment for her work injury, which consisted of strains to Claimant's lumbar and cervical spine and her right wrist.

Based on the above, we cannot agree that Dr. Gordon's opinions were incompetent. We also reject Claimant's argument that Dr. Gordon's opinions cannot support a termination of her benefits, as he was only required to recognize the accepted work injury, not any and all injuries Claimant alleged she sustained.[13] The May 19, 2015 NCD described Claimant's work injury as a right wrist strain. C.R., Item No. 28. While Dr. Gordon initially stated that Claimant suffered from a cervical and lumbar strain and "perhaps a right hand strain[,]" he later clarified that Claimant's work injury consisted of low back, cervical, and right wrist strains. C.R., Item No. 38, Gordon Deposition at 17-18.

### C. Suspension Petition

Next, Claimant argues that the WCJ erred in granting Employer's suspension petition, given that Claimant's counsel dispersed the proceeds of her third-party settlement prior to the date the WCJ rendered her first decision. Claimant requests that this Court reverse the Board's order affirming the WCJ's decision as to the

---

[13] A medical opinion that fails to recognize the accepted work injury is insufficient to support a termination of benefits. *Westmoreland Cnty.*, 942 A.2d at 218.

21

suspension of Claimant's benefits and remand the matter to a different WCJ for disposition.

While Employer's motivation for seeking a suspension of Claimant's benefits was satisfied upon receipt of the proceeds from her third-party settlement, we agree with the Board that the WCJ's decision to grant the suspension petition amounted to harmless error, in light of the simultaneous termination of Claimant's benefits. We perceive no harm to Claimant in letting that decision stand and discern no benefit in pursuing a remand, which will only serve to unnecessarily prolong the instant litigation.

### D. Penalties

Finally, Claimant argues that Employer violated the Act when it failed to properly compensate Claimant for the periods during which she was taken out of work by Dr. Tabby, despite having acknowledged Claimant's "work related right wrist, low back, and neck strains," and that Employer failed to comply with the accommodations memorialized in the February 19, 2016 agreement. Claimant also suggests that Employer issued the NCD for the express purpose of relieving itself of the obligation to pay wage loss benefits. Claimant acknowledges that the imposition of penalties is within the WCJ's discretion, and that a decision to grant or deny penalties will not be overturned, absent an abuse of that discretion.

Section 435(d)(i) of the Act, 77 P.S. § 991,[14] provides that, where a violation of the Act has occurred, the WCJ may assess a penalty not exceeding 10% of the amount awarded. The assessment of penalties, and the amount imposed, is discretionary, however. *Essroc Materials v. Workers' Comp. Appeal Bd. (Braho)*, 741 A.2d 820, 825 (Pa. Cmwlth. 1999). Even where it is apparent from the record

---

[14] Added by the Act of February 8, 1972, P.L. 25.

22

that a violation of the Act has taken place, the imposition of a penalty is left to the WCJ's discretion, and the WCJ's decision in that regard will not be disturbed absent an abuse of discretion. *Id.* "An abuse of discretion is not merely an error of judgment but occurs, *inter alia*, when the law is misapplied in reaching a conclusion." *Westinghouse Elec. Corp. v. Workers' Comp. Appeal Bd. (Weaver)*, 823 A.2d 209, 213-14 (Pa. Cmwlth. 2003) (internal citations omitted).

Beyond her vague characterization of the WCJ's decisions as "ambivalent and internally contradictory[,]" Claimant has failed to identify how the WCJ abused her discretion in denying Claimant's request for penalties. Claimant's Br. at 64. Further, regarding Employer's failure to abide by the accommodations set forth in the February 19, 2016 agreement, Claimant has not specified how Employer violated the provisions of the Act or the Department's rules and regulations.

As to its alleged failure to pay Claimant's wage loss benefits, Employer initially accepted liability for Claimant's work injury on May 8, 2015, through issuance of a medical-only NTCP, which Employer amended on May 13, 2015, to acknowledge Claimant's wage loss due to the work injury. C.R., Item Nos. 25-26. Claimant has not asserted that Employer failed to pay her wage loss benefits pursuant to the amended NTCP. On May 19, 2015, Employer issued the NSTC and NCD contesting its liability for Claimant's work injury. *Id.*, Item Nos. 27-28. Although Employer agreed in the NCD to continue paying the cost of Claimant's reasonable and necessary medical expenses related to her work injury, which Employer described as a right wrist strain, Employer explicitly contested the extent of its liability and the extent of Claimant's disability. C.R., Item No. 28. The additional periods for which the WCJ found Employer liable for the payment of wage loss benefits occurred in August and December 2015, several months after Employer

23

contested the existence of any work injury beyond a right wrist strain. It is not clear why Dr. Tabby took Claimant out of work in August 2015; however, Claimant's December 2015 work stoppage was due to "aggravation of her low back pain." C.R., Item No. 35, Tabby Deposition, at 29-30.

In light of the above, we do not perceive that the WCJ abused her discretion in denying Claimant's request for penalties and we will not overturn her decision on appeal.[15]

## IV. Conclusion

Ultimately, our appellate role in a workers' compensation case is not to reweigh the evidence or the credibility of the witnesses, but simply to determine whether the WCJ's findings have the requisite measure of support in the record as a whole. *Elk Mountain Ski Resort, Inc. v. Workers' Comp. Appeal Bd. (Tietz, deceased)*, 114 A.3d 27, 33 n.5 (Pa. Cmwlth. 2015).

We will not disturb the WCJ's decision granting Employer's termination petition and denying Claimant's petition seeking reinstatement of her workers' compensation benefits and an amendment to the description of her work injury, as those decisions turn on the WCJ's credibility determinations. The WCJ properly

---

[15] We give no credence to Claimant's argument that the WCJ's description of Claimant's third-party settlement as "woefully inadequate" reflects "clear bias." Claimant's Br. at 42. While the WCJ's opinion may have been unartfully stated, Claimant's suggestion that the WCJ's opinion regarding the sufficiency of the third-party settlement "may have induced her to improperly and prematurely terminate [Claimant's] benefits to protect [Employer] from further losses" is nothing more than rampant speculation that is wholly unsupported by the record. Claimant's Br. at 61.

We also find no merit to Claimant's argument that the reinstatement of her workers' compensation benefits should have been extended beyond March 30, 2017, due to the lower salary she receives from LaSalle. Claimant's benefits were terminated on March 30, 2017, because the WCJ credited Dr. Gordon's testimony that she had fully recovered from her work injury as of that date. The part-time wages Claimant received thereafter are simply irrelevant to an evaluation of her recovery from the April 16, 2015 work injury.

exercised her discretion in denying Claimant's request for penalties. To the extent the WCJ erred in granting Employer's suspension petition, we conclude it was harmless, given that the WCJ terminated Claimant's benefits following a finding that she had fully recovered from her work injury. Accordingly, we affirm the Board.

_____

ELLEN CEISLER, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Judith Carbonell-Caban, : 
                Petitioner : 
                 : 
      v. : No. 133 C.D. 2021
                 : 
Elwyn, Inc. (Workers' Compensation : 
Appeal Board), : 
                 : 
            Respondent : 

# **O R D E R**

AND NOW, this 18ᵗʰ day of May, 2022, the January 20, 2021 Order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

                                 _____

                                 ELLEN CEISLER, Judge